**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LG ELECTRONICS, INC. and LG
ELECTRONICS U.S.A., INC.,

            Plaintiffs,

        v.

WI-LAN USA, INC. and WI-LAN INC.,

            Defendants.

Case No. 13-cv-2237 (RA)

Date:  April 16, 2013
Time:  11:30 a.m.
Courtroom: 1506
Location: 40 Foley Square, New York, NY

**DEFENDANTS WI-LAN USA, INC. AND WI-LAN INC.'S OPPOSITION TO PLAINTIFFS
LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A., INC.'S MOTION FOR
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Frederick L. Whitmer
KILPATRICK, TOWNSEND & STOCKTON LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
fwhitmer@kilpatricktownsend.com

David E. Sipiora
Brian P. O'Donnell (*pro hac vice* to be filed)
Kent T. Dallow (*pro hac vice* to be filed)
KILPATRICK, TOWNSEND & STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
dsipiora@kilpatricktownsend.com
bodonnell@kilpatricktownsend.com
kdallow@kilpatricktownsend.com

*Attorneys for Defendants Wi-LAN USA, Inc. and
Wi-LAN, Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS .................................................................................. 2

III.  LEGAL STANDARDS ....................................................................................... 4

   A.   Elements and Burden of Proof Regarding Preliminary Injunctive Relief ......... 4

   B.   Irreparable Harm ................................................................................................ 5

   C.   Waiver of Right to Arbitrate .............................................................................. 6

IV.   ARGUMENT ..................................................................................................... 8

   A.   This Court Should Dismiss This Case as a Transparent End Run Around a
        Sister Court That is About to Rule On the Very Same Arbitration Issues LG
        Raises Here ......................................................................................................... 8

   B.   LG's Motion for TRO Should Be Denied Because LG Cannot Show It Will
        Be Irreparably Harmed, Is Not Likely To Succeed On the Merits and the
        Balance of Hardships Favors Wi-LAN ................................................................ 8

      1.   LG Cannot Make the Required Clear Showing That It Will Be
           Irreparably Harmed ...................................................................................... 9

      2.   LG Is Not Likely to Succeed on the Merits ............................................. 11

         a.   Wi-LAN Has Not Waived Its Right to Arbitrate ................................... 11

            i.    The JAMS Arbitrator Must Decide LG's "Gateway" Waiver
                  Argument .................................................................................... 12

            ii.   There is No Waiver Because Wi-LAN Has Not Acted
                  Inconsistently with the Arbitration Right and LG Has Not Been
                  Prejudiced ................................................................................... 13

         b.   Wi-LAN's Arbitration Demand Falls Squarely Within the Scope of
              the Mandatory Arbitration Provision ................................................... 16

            i.    Whether Wi-LAN's Arbitration Demand is Beyond the Scope of
                  the Arbitration Provision Is a Matter of Contract Interpretation
                  Decided By the Arbitrator ............................................................ 17

            ii.   Wi-LAN's Demand for Arbitration to Interpret the Meaning of
                  "Wireless" Falls Squarely Within The Bounds of the Arbitration
                  Provision ..................................................................................... 19

         c.   Wi-LAN's Arbitration Demand Does Not Violate the Claim-Splitting
              Doctrine Because Wi-LAN Has Not Asserted the Same Claims in
              the Florida Litigation .......................................................................... 21

      3.   The Balance of Hardships Favors Wi-LAN .............................................. 23

   C.   LG Should Be Required to Post a Bond ............................................................ 25

V.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

<span style="font-variant: small-caps">CASES</span>

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
   860 F. Supp. 128 (S.D.N.Y. 1994)............................................................................8

*Accenture LLP v. Spreng*,
   2010 U.S. Dist. LEXIS 137744 (S.D.N.Y. Dec. 23, 2010) ..................................4-5

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
   307 F.3d 24 (2d Cir. 2002)......................................................................................7

*AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,
   626 F.3d 699 (2d Cir. 2010)....................................................................................8

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
   326 F.3d 63 (2d Cir. 2003).....................................................................................23

*AT&T Techs., Inc. v. Commc'ns Workers of America*,
   475 U.S. 643 (1986)...............................................................................................18

*Bell v. Cendant Corp.*,
   293 F.3d 563 (2d Cir. 2002)........................................................................ 12-13, 18

*Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*,
   203 F.R.D. 677 (S.D. Fla. 2001).............................................................................19

*Cacchillo v. Insmed, Inc.*,
   638 F.3d 401 (2d Cir. 2011).....................................................................................5

*Contec Corp. v. Remote Solution, Co.*,
   398 F.3d 205 (2d Cir. 2005).............................................................................. 18-19

*Danny's Const. Co., Inc. v. Birdair, Inc.*,
   136 F. Supp. 2d 134 (W.D.N.Y. 2000).................................................................22

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...............................................................................................22

*Freedom Holdings, Inc. v. Spitzer*,
   408 F.3d 112 (2d Cir. 2005)......................................................................................6

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
   2013 WL 361810 (N.D. Ill. Jan. 30, 2013)...........................................................23

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001)....................................................................................25

*Hodgson v. Royal Caribbean Cruises, Ltd.*,
    706 F. Supp. 2d 1248 (S.D. Fla. 2009) ................................................................16

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)......................................................................................... 12-13

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995) ........................................................................6, 9, 11

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
    917 F.2d 75 (2d Cir. 1990)..............................................................................6

*Katz v. Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) ......................................................................23

*Kim v. Sara Lee Bakery Group, Inc.*,
    412 F. Supp. 2d 929 (N.D. Ill. 2006) ..............................................................23

*Kramer v. Hammond*,
    943 F.2d 176 (2d Cir. 1991)............................................................................7

*Krantz & Berman LLP v. Dalal*,
    472 Fed. Appx. 76 (2d Cir. 2012)....................................................................7

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001)......................................................................... 7-8

*LSSi Data Corp. v. Time Warner Cable, Inc.*,
    2012 U.S. Dist. LEXIS 72122 (S.D.N.Y. May 23, 2012) ....................................5

*Maaco Enters., Inc. v. Bremner*,
    1998 U.S. Dist. LEXIS 15539 (E.D. Pa. Sept. 29, 1998) ...................................11

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*,
    58 F.3d 616 (Fed. Cir. 1995).........................................................................23

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
    312 F.3d 94 (2d Cir. 2002)..............................................................................5

*Monex Deposit Co. v. Gilliam*,
    616 F. Supp. 2d 1023 (C.D. Cal. 2009) ............................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. (1983)..............................................................................................7

*Mulvaney Mechanical, Inc. v. Sheet Metal Workers Int'l Assoc. Local 38*,
    351 F.3d 43 (2d Cir. 2003)......................................................................12, 17

ii

*Nilsen v. Prudential-Bache Sec.,*
   761 F. Supp. 279 (S.D.N.Y. 1991)........................................................................22

*Nokia Corp. v. Interdigital, Inc.,*
   645 F.3d 553 (2d Cir. 2011)................................................................................25

*Qualcomm Inc. v. Nokia Corp.,*
   466 F.3d 1366 (Fed. Cir. 2006)...........................................................................19

*Rafferty v. Xinhua Fin. Ltd.,*
   2011 WL 335312 (S.D.N.Y. Jan. 31, 2011) .........................................................19

*REDF Organic Recovery, LLC v. Kafin,*
   2012 U.S. Dist. LEXIS 165390 (S.D.N.Y. Nov. 19, 2012)..............................14, 16

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.,*
   962 F. Supp. 385 (S.D.N.Y.1997)........................................................................25

*Republic of Ecuador v. Chevron Corp.,*
   638 F.3d 384 (2d Cir. 2011)................................................................................13

*Reuters Ltd. v. United Press Int'l, Inc.,*
   903 F.2d 904 (2d Cir. 1990)........................................................................5, 9, 10

*Rodriguez v. DeBuono,*
   175 F.3d 227 (2d Cir. 1999)...............................................................................6, 9

*Rush v. Oppenheimer & Co.*
   779 F.2d 885 (2d Cir. 1985).................................................................................7

*Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.,*
   320 F.3d 1081 (10th Cir. 2003) ...........................................................................6

*Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.,*
   49 F. Supp. 2d 331 (S.D.N.Y. 1999).....................................................................21

*Schlaifer Nance & Co., Inc. v. Estate of Warhol,*
   764 F. Supp. 43 (S.D.N.Y. 1991).........................................................................22

*Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   1992 WL 245506 (S.D.N.Y. Sept. 14, 1992).........................................................16

*Second City Music, Inc. v. City of Chicago,*
   333 F.3d 846 ((7th Cir. 2003) ...................................................................... 10-11

*Shaw v. Carnival Cruise Lines,*
   2011 U.S. Dist. LEXIS 58704 (S.D. Fla. May 31, 2011) .......................................15

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*,
 202 F. Supp. 2d 228 (S.D.N.Y. 2002)......................................................................5

*Sidell v. Structured Settlement Investments, LP*,
 2009 U.S. Dist. LEXIS 2244 (D. Conn. Jan. 14, 2009)........................................19

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
 495 F. Supp. 2d 1052 (S.D. Cal. 2007)................................................................23

*Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*,
 754 F.2d 457 (2d Cir. 1985).............................................................................7, 13

*T.W. Oil (Houston), Inc. v. BP Shipping Ltd.*,
 1986 WL 977 (S.D.N.Y. Jan. 15, 1986) ..............................................................15

*Thyssen, Inc. v. Calypso Shipping Corp.*,
 310 F.3d 102 (2d Cir. 2002)..........................................................................6-7, 16

*Tony-Dick v. Doar*,
 2013 U.S. Dist. LEXIS 50050 (S.D.N.Y. Mar. 18, 2013) .....................................9

*Tradescape.com v. Shivaram*,
 77 F. Supp. 2d 408 (S.D.N.Y. 1999)....................................................................24

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ................................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(c) ....................................................................................................24

Fed. R. Civ. P 26(f)................................................................................................16, 24

## I.     <u>INTRODUCTION</u>

The Complaint filed by Defendants LG Electronics, Inc. and LG Electronics, U.S.A., Inc.'s (collectively, "LG") should be dismissed and their Motion for Temporary Restraining Order and Preliminary Injunctive Relief ("Motion") denied based on the First-to-File rule and principles of judicial comity.  The overarching reason for that conclusion is straightforward.  LG's pleadings are nothing more than a transparent effort to frustrate the jurisdiction of a Florida sister court of competent jurisdiction that is to imminently rule on ***substantially, if not exactly, the same issues*** LG now attempts to raise in this Court.  Even if this Court denies Wi-LAN's concurrently filed Motion to Dismiss, this Court should nevertheless deny LG's Motion because LG fails in all respects to satisfy the threshold showing that it will be irreparably harmed.

Aware that it cannot meet this burden, LG seeks to divert this Court's attention by arguing the likelihood of success factors first, when this Court need not even consider those factors if LG cannot first demonstrate irreparable harm.  This it cannot do because Wi-LAN promptly moved to compel arbitration causing LG no undue expense or delay, nothing substantive has taken place in the JAMS arbitration, and all of the relief LG seeks in this Court will be determined shortly by the Florida Court in possession of Wi-LAN's fully-briefed and ripe for adjudication Motion to Compel Arbitration.

Though it not need reach these issues in rejecting the Motion, this Court should also deny LG's Motion because LG cannot demonstrate a likelihood of success on the merits.  Federal policy strongly favors arbitration and the arbitration provision at issue here, clearly agreed upon by the parties, mandates that the parties' dispute over the ***interpretation*** of the word "wireless" be arbitrated by JAMS.  Furthermore, Wi-LAN has not waived its right to arbitrate.  LG raised a license defense, Wi-LAN acted promptly to compel arbitration based on an express arbitration

1

clause in that license and has acted consistent with its intent to arbitrate ever since.  Finally, LG's

remaining arguments on arbitrability and Wi-LAN's pursuit of "injunctive/equitable relief" in

the Florida Action are devoid of merit.

**II.**        **STATEMENT OF FACTS**

On October 3, 2012, Wi-LAN initiated the first-filed lawsuit in the U.S. District Court for

the Southern District of Florida, Case No 1:12-cv-23611-JAL ("Florida Action"), asserting that

LG infringes U.S. Patent Nos. 6,359,654 and 7,034,889 ("Patents-in-Suit") (NY Action, Dkt. No.

2, ¶ 14).  Wi-LAN alleged that LG is making, using, offering for sale, selling and/or importing

into the U.S. infringing products, "including but not limited to the 6200 series of flat panel

televisions."  Fla. Action, Dkt. No. 1, ¶¶ 10-11, 15-16.  The Patents-in-Suit relate generally to the

video display technology used in digital flat panel televisions.  On November 15, 2012 and

December 17, 2012, LG requested extensions to file its Answer (Fla. Dkt. Nos. 7, 14), to which

Wi-LAN consented, allowing first until December 17, 2012, and then until January 25, 2013.

Rather than answering the Florida Action Complaint, on January 25, 2013, LG filed a

Motion for Summary Judgment of Non-Infringement (Fla. Action, Dkt. No. 22), a Motion to

Dismiss Wi-LAN's infringement claims (Fla. Action, Dkt. No. 25), and a Motion for Transfer of

Venue to the District of New Jersey (Fla. Action, Dkt. No. 30) (collectively, the "LG Motions").

In LG's Motion for Summary Judgment, LG alleged that the accused products identified in the

Complaint are licensed products within the meaning of a Patent License Agreement ("PLA")

entered into on December 21, 2010 between Wi-LAN International Inc. and LG Electronics, Inc.,

on behalf of itself and its "Subsidiaries."  Fla. Action, Dkt. No. 22, p. 1; NY Action, Dkt. No. 2,

Ex. A.  Wi-LAN disagrees with LG's interpretation of what products fall within the scope of the

PLA, however, as the accused products are not "Subject Products" within the meaning of the

PLA.  Fla. Action, Dkt. No. 65 at p. 7.  Thus, the parties have a dispute as to the proper

interpretation of the PLA, which contains choice of law and arbitration provisions as follows:



NY Action, Dkt. No. 2, Ex. A, ¶¶ 8.2-8.3.

On February 8, 2013, in response to LG's alleged license defense, Wi-LAN filed its

Demand for Arbitration before JAMS in New York.  *See* Declaration of Kent T. Dallow in

Support of Wi-LAN's Opposition to LG's Motion for Temporary Restraining Order, ¶ 2, Ex. A

("Dallow Dec.  ¶ __").  In its Demand, Wi-LAN seeks a determination as to the proper

interpretation of the term "wireless" as used in the PLA. *Id.*   This is an issue of pure contract

interpretation.  The JAMS arbitrator will not address any of the patent infringement assertions

alleged by Wi-LAN in the Florida Action.  On February 8, 2013, LG filed a Motion to Stay

certain discovery (Fla. Action, Dkt. No. 34).  LG did not move the Florida Court for an Order

enjoining Wi-LAN from proceeding in arbitration.

On February 11, 2013, because LG refused to submit to arbitration as mandated by the

PLA, Wi-LAN filed its Motion to Compel Arbitration. Fla. Action, Dkt. No. 37.  Wi-LAN also

filed and served a First Amended Complaint (the "FAC").  Fla. Action, Dkt. No. 35.  On

February 12, 2013, the Court denied the LG Motions as moot based on the FAC.  Fla. Action,

Dkt. Nos. 43, 44.  On February 22, 2013, LG filed a Renewed Motions to Dismiss, Transfer and for Summary Judgment (Fla. Action, Dkt. Nos. 49, 51, 53) (collectively, the "LG Renewed Motions").  That same day, LG filed a second Motion to Stay Discovery (Fla. Action, Dkt. No. 52) acknowledging the Florida Court's authority to decide Wi-LAN's arbitration motion (*see, e.g.,* p. 2, "Accordingly, under controlling Eleventh Circuit law, the Court should … stay discovery, until *after* the Court rules on … Wi-LAN's motion to compel arbitration.").

On March 4, 2013, JAMS formally commenced arbitration and entered a deadline of March 11, 2013, for the parties to submit a strike-and-rank list to determine the arbitrator.  NY Action, Dkt. No. 2, ¶¶ 71, 74.  On March 11, 2013, LG requested that JAMS stay the arbitration proceedings and, shortly thereafter, JAMS rejected that request.  *Id.* at ¶¶ 72, 74.  On April, 4, 2013, LG filed this lawsuit (the "New York Action").  On April 9, 2013, JAMS advised the parties that an arbitrator had been selected on.  Dallow Decl., ¶ 3, Ex. B.

Notwithstanding the fact that: (1) the first-filed Florida Action and later-filed New York Action involve the same parties and issues, (2) the LG Renewed Motions are fully briefed and under submission with the Florida Court, and (3) LG never sought injunctive relief before the Florida Court, LG now seeks extraordinary relief in the form of a temporary restraining order and preliminary injunction from this Court.  New York Action, Dkt. No. 2 at ¶¶ 87-105.  LG's attempt to circumvent the competent jurisdiction of the Florida Court should be rejected.

## III.     LEGAL STANDARDS

### A.   Elements and Burden of Proof Regarding Preliminary Injunctive Relief

"Temporary restraining orders and preliminary injunctions are among 'the most drastic tools in the arsenal of judicial remedies,' and must be used with great care."  *Accenture LLP v. Spreng*, 2010 U.S. Dist. LEXIS 137744, *3 (S.D.N.Y. Dec. 23, 2010) *quoting Grand River*

*Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (denying motion for temporary restraining order and preliminary injunction seeking to enjoin arbitration).  To obtain a temporary restraining order, the moving party must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."  *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002) (internal citation omitted).

Ordinarily, these factors must be proven by the moving party by a preponderance of the evidence.  *See Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp. 2d 228, 233 (S.D.N.Y. 2002) (preliminary injunction elements must be established by preponderance of evidence).  However, the burden is even higher on a party "that seeks a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011).  "A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Id*.  Moreover, the movant's burden is also heightened where "the motion seeks, effectively, the same relief as [in the] Complaint, and such relief could not be readily undone."  *LSSi Data Corp. v. Time Warner Cable, Inc.*, 2012 U.S. Dist. LEXIS 72122, *27-28 fn. 12 (S.D.N.Y. May 23, 2012).

## B.  <u>Irreparable Harm</u>

Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction."  *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) *quoting Bell & Howell: Mamiya Co. v. Masel Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983).

Accordingly, the moving party must first prove "that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (internal citation omitted).  If a movant fails to establish "irreparable harm in the absence of an injunction, there is no need to reach the second portion of the preliminary injunction analysis."  *See Jayaraj v. Scappini*, 66 F.3d 36, 38-39 (2d Cir. 1995).

"Irreparable harm must be shown by the moving party to be imminent, not remote or speculative," *Reuters*, 903 F.2d at 907, *citing Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989), and "one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (denying motion for preliminary injunction for failure to prove irreparable harm and not addressing remaining factors).  The movant must establish not a mere possibility of irreparable harm, but that it is "*likely* to suffer irreparable harm if equitable relief is denied."  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (emphasis original).  "Likelihood sets, of course, a higher standard than 'possibility.'"  *Id.*  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."  *Jayaraj*, 66 F.3d at 39, *quoting Sampson v. Murray*, 415 U.S. 61, 90 (1974).  "The possibility that adequate compensatory or other corrective relief will be available at a later date … weighs heavily against a claim of irreparable harm." *Id.*  Furthermore, self-inflicted harms are never considered irreparable.  *See, e.g., Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("[w]e will not consider a self-inflicted harm to be irreparable").

### C.  Waiver of Right to Arbitrate

"There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102,

104-105 (2d Cir. 2002) (internal quotations and citation omitted) (finding no waiver of right to

arbitrate).  The party arguing waiver bears a "heavy burden" to prove waiver.  *See, e.g., Sweater*

*Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 464-65 (2d Cir. 1985) (Plaintiff failed

to meet "heavy burden" to prove waiver of arbitration right).  "The key to a waiver analysis is

prejudice."  *See, e.g., Krantz & Berman LLP v. Dalal*, 472 Fed. Appx. 76, 77 (2d Cir. 2012)

*citing Thyssen*, 310 F.3d at 105.  "[W]aiver of the right to compel arbitration due to participation

in litigation may be found only when prejudice to the other party is demonstrated."  *Rush v.*

*Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir. 1985).  "Prejudice can be substantive, such as

when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by

invoking arbitration, or it can be found when a party too long postpones his invocation of his

contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or

expense."  *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991).

 Moreover, given the Federal Arbitration Act's liberal policy favoring arbitration, any

doubts as to the arbitrability of a matter are resolved in favor of arbitration.  *See, e.g., Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24-25 (1983) ("[A]ny doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

problem at hand is the construction of the contract language itself or an allegation of

waiver…."); *see also ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24,

29 (2d Cir. 2002) (because of the "strong federal policy favoring arbitration … doubts as to

whether a claim falls within the scope of [the] agreement should be resolved in favor of

arbitrability.") (internal quotations and citation omitted).  Moreover, if an arbitration provision is

broad, a presumption of arbitrability attaches such that "arbitration of even a collateral matter

will be ordered if the claim alleged implicates issues of contract construction or the parties'

rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

## IV.     ARGUMENT

### A.  This Court Should Dismiss This Case as a Transparent End Run Around a Sister Court That is About to Rule On the Very Same Arbitration Issues LG Raises Here

As set forth in Wi-LAN's concurrently filed Motion to Dismiss, this Court should dismiss this case under the well-established "First-to-File" rule.  *See, e.g., 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (granting motion pursuant to the First-to-File rule).  This case involves the exact same parties and ***substantially overlapping***, if not the ***exact same*** issues and, therefore, is entirely duplicative of the Florida Action.  Under the First-to-File rule, when duplicative lawsuits are pending in separate federal courts, involving the same parties and overlapping issues, the entire controversy is decided by the court in which the first action was filed.  *See, e.g., AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 722-23 (2d Cir. 2010) ("It is well-established, then, that 'when a case is brought in one federal district court [and the complaint] embraces essentially the same transaction as those in a case pending in another federal district court, the latter may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case.'") *quoting Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961); *see also 800-Flowers,* 860 F. Supp. at 131.  Thus, dismissal is warranted under the First-to-File rule.

### B.  LG's Motion for TRO Should Be Denied Because LG Cannot Show It Will Be Irreparably Harmed, Is Not Likely To Succeed On The Merits and the Balance of Hardships Favors Wi-LAN

If the Court denies Wi-LAN's Motion to Dismiss, this Court should nevertheless deny LG's Motion because LG has not made a clear showing that it will suffer irreparable harm absent

an injunction.  Moreover, LG is not at all likely to succeed on the merits and the balance of

hardships favors Wi-LAN because an injunction would deprive Wi-LAN of the benefit of its

bargained for, contractual right to arbitrate under a valid arbitration provision.

>    1.    **LG Cannot Make the Required Clear Showing That It Will Be Irreparably Harmed**

Despite being the "single most important prerequisite for the issuance of a preliminary

injunction," *Reuters Ltd.*, 903 F.2d at 907 (internal quotations and citation omitted), and the

factor that LG *must* demonstrate "before the other requirements for the issuance of an injunction

will be considered," *Rodriguez*, 175 F.3d at 233-34, LG's Motion argues the likelihood of

success factors first before addressing the irreparable harm factor.  Under controlling Second

Circuit law, however, the likelihood of success factors are not even to be considered by this

Court unless LG has made a clear showing of irreparable harm absent the issuance of an

injunction.  *See Jayaraj*, 66 F.3d at 38-39 (no need to reach likelihood of confusion factors if

irreparable harm not shown).  LG's arguments that it will be irreparably harmed absent

injunctive relief fail for at least three reasons.

First, LG cannot show that irreparable harm is imminent, which it must do to prevail on

its Motion.  *See, e.g., Tony-Dick v. Doar*, 2013 U.S. Dist. LEXIS 50050, *33 (S.D.N.Y. Mar. 18,

2013) (injury alleged to be irreparable must be actual and imminent, not merely possible).  The

JAMS arbitration has barely begun with JAMS identifying the arbitrator only *two days ago.  See*

Dallow Decl. ¶ 3, Exhibit B.  Moreover, payment of the arbitrator's required preliminary retainer

fee has not yet been made and LG has not filed any Response to Wi-LAN's notice of claim.  *Id.*

at ¶ 4.  No arbitration management conference has been set by JAMS (requiring payment of the

retainer first).  *Id.* at ¶ 6.  No case schedule has been set by the arbitrator.  *Id*.  The parties have

not engaged in any preliminary motion practice or exchanged information, served

interrogatories, document requests, taken depositions, or in fact engaged in any discovery at all. *Id.* at ¶ 7.  Accordingly, there is simply no imminent harm to LG and the mere *possibility* of harm to LG should the JAMS proceeding progress in any material way before the Florida Court issues its ruling does not qualify as "irreparable" harm.

Second, the alleged irreparable harm LG will suffer is entirely speculative, which also warrants denying LG's Motion.  *See, e.g., Reuters*, 903 F.2d at 907 (irreparable harm must not be "remote or speculative").  It is difficult to see how LG will be irreparably harmed by waiting for the Florida Court to determine Wi-LAN's Motion to Compel Arbitration, which could happen *within days* given that the matter is fully briefed and awaiting decision.  The Florida Court could grant Wi-LAN's Motion to Compel tomorrow and the parties will simply continue with arbitration.[1]  The Florida Court could also deny Wi-LAN's motion tomorrow providing LG with all of the relief it seeks by bringing this Motion.  Accordingly, LG's alleged harm is entirely speculative.  By accepting evidence of LG's speculative injuries, this Court effectively would be shifting the burden of proof to Wi-LAN to show that under no circumstances would the Florida Court grant LG the relief it seeks, which is simply not the case.

Finally, LG's feverish arguments that it – a $48 billion (2011 net sales) global company – "has exhausted time and resources, and incurred significant costs, in preparing and filing its dispositive motions and its motions to transfer" fail because LG could simply have filed an Answer to Wi-LAN's complaint in the Florida Action and began litigating this case on the merits.  The fact that LG, and LG alone, decided to incur the costs associated with the filing of a torrent of preliminary motions in the Florida Action and this extraordinary Motion constitute self-inflicted harms that are not recognized as "irreparable" by any court of law.  *See e.g., Second*

---

[1] On April 9, 2013, in response to a motion filed by Wi-LAN to enjoin LG from proceeding with this New York Action, the Florida Court issued an Order to Show Cause (Fla. Dkt. No. 90) directing LG to respond to the motion by today (April 11, 2013) and allowing Wi-LAN a single day, to April 12, 2013, to file any reply.

*City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-inflicted wounds are not irreparable injury").  Any harm suffered by LG has been brought on by itself by breaching, or anticipatorily breaching, the mandatory arbitration provision of the 2010 PLA and its continuing infringement of Wi-LAN's asserted patents.  *See, e.g., Maaco Enters., Inc. v. Bremner*, 1998 U.S. Dist. LEXIS 15539, *12 (E.D. Pa. Sept. 29, 1998) (harm suffered by defendants was brought on by themselves as a result of their breach of franchise agreement). Moreover, even if not deemed self-inflicted, the costs and time incurred by LG may be harmful, but they do not constitute *irreparable* harm.  *See, e.g., Jayaraj*, 66 F.3d at 39 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

Accordingly, because LG has failed to make the required "clear showing" that it will suffer irreparable harm in the absence of an injunction, there is no need for this Court to even reach the second portion of the preliminary injunction analysis.

### 2.   LG Is Not Likely to Succeed on the Merits

#### a.   *Wi-LAN Has Not Waived Its Right to Arbitrate*

LG's claim that it is likely to succeed on the merits based on a claim that Wi-LAN has waived its right to arbitrate is mistaken and should be rejected, whether decided by the Florida Court or by the JAMS arbitrator.  Importantly, LG does *not* dispute that the 2010 PLA contains a valid arbitration clause, but rather contends that Wi-LAN has waived its right to arbitrate LG's license defense which was raised by LG in response to Wi-LAN's patent infringement suit in the Florida Court.  Although suit was filed on October 3, 2012, LG never contacted Wi-LAN or made any mention of its alleged license defense until January 25, 2013, when it responded to the Florida Complaint by moving for summary judgment based on alleged license.  Two weeks later,

Wi-LAN filed its demand for arbitration of that alleged license defense.  Before addressing the

merits of this issue, Wi-LAN addresses first the question of who decides LG's waiver argument

– this Court or the JAMS arbitrator – and then turns to the merits.

### i.   The JAMS Arbitrator Must Decide LG's "Gateway" Waiver Argument

Under controlling Supreme Court and Second Circuit law, LG's waiver argument is

properly decided by the JAMS arbitrator and LG's arguments to the contrary are incorrect.  The

Supreme Court has "distinguished between 'questions of arbitrability,' which are to be resolved

by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,'

which are presumptively reserved for the arbitrator's resolution."  *Mulvaney Mechanical, Inc. v.

Sheet Metal Workers Int'l Assoc. Local 38*, 351 F.3d 43, 45 (2d Cir. 2003) *quoting Howsam v.

Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).  The former category "includes disputes

about 'whether the parties are bound by a given arbitration clause' and 'whether an arbitration

clause in a concededly binding contract applies to a particular controversy."  *Id.* (internal

citations omitted).  "Questions of arbitrability" are to be decided by the court unless "there is

clear and unmistakable evidence from the arbitration agreement…that the parties intended that

[they] shall be decided by the arbitrator."  *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir.

2002) (internal quotations and citation omitted).

"The latter category, by contrast, includes disputes about such defenses to arbitrability as

*waiver*, estoppel, laches, and time limits."  *Mulvaney Mechanical, Inc.*, 351 F.3d at 45 (internal

citations omitted) (emphasis added).   For the latter category, the presumption on who decides –

court or arbitrator – is reversed and the presumption is in favor of an arbitrator deciding absent

an agreement to the contrary.  LG's waiver argument falls into this second category of issues

presumptively for determination by the JAMS arbitrator.  *See, e.g., Howsam v. Dean Witter*

*Reynolds, Inc.,* 537 U.S. 79, 84-85 (2002) (the "presumption is that the arbitrator should decide

'allegations of waiver, delay, or a like defense to arbitrability'") *quoting Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Republic of Ecuador v.*

*Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) ("Both waiver and estoppel generally fall into

the latter group of issues presumptively for the arbitrator); *Bell*, 293 F.3d at 569 (2d Cir. 2002)

("Ordinarily a defense of waiver brought in opposition to a motion to compel arbitration is a

matter to be decided by the arbitrator") (internal ellipses, citations and quotations omitted).  As

there is nothing in the 2010 PLA that counters this presumption, LG's waiver argument is

properly decided by the arbitrator.

> ### ii.   There is No Waiver Because Wi-LAN Has Not Acted Inconsistently with the Arbitration Right and LG Has Not Been Prejudiced

Even assuming *arguendo* that this Court determines that it should decide the issue of

conduct-based waivers under the circumstances of this case, LG's arguments are devoid of merit.

LG has not even come close to carrying its "heavy burden" to show waiver.  *See, e.g., Sweater*

*Bee by Banff, Ltd.*, 754 F.2d at 464-65 (plaintiff failed to meet "heavy burden" to prove waiver

of arbitration right).  To the contrary, Wi-LAN has acted quickly, consistently and appropriately

in pursuing arbitration mandated by the parties' agreement *with respect to arbitrable issues* and

LG has in no way been prejudiced by Wi-LAN's actions.  "In determining whether a party has

waived its right to arbitration by expressing its intent to litigate the dispute in question, the Court

considers three factors: (1) the time elapsed from when litigation commenced until the request

for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and

(3) proof of prejudice."  *REDF Organic Recovery, LLC v. Kafin*, 2012 U.S. Dist. LEXIS 165390,

*11 (S.D.N.Y. Nov. 19, 2012) (internal quotations and citation omitted) (Despite waiting two-

and-a-half years, court held "Plaintiff has failed to demonstrate that [Defendant] was unreasonable in waiting to assert his right to arbitration.")  (*Id.* at *14).

**First Factor:**  The first factor strongly favors Wi-LAN.  Wi-LAN's right to select arbitration first accrued on January 25, 2013, the date on which LG filed its Motion for Summary Judgment arguing that it does not infringe the patents-in-suit because it was licensed under the PLA.  *See* Fla. Action, Dkt. No. 22.  In accordance with the arbitration provision of the PLA that *requires* arbitration of disputes arising out of that agreement, Wi-LAN properly filed a Demand for Arbitration with JAMS on February 8, 2013, *a mere **two weeks*** after first learning of the arbitrable issue.  Dallow Decl. ¶ 2, Exhibit A; *see REDF Organic Recovery, LLC*, 2012 U.S. Dist. LEXIS 165390 at *12 ("[A]s soon as the breach of [License] Agreement was raised with a court, defendants asserted their right to arbitration.).  In stark contrast, LG has had knowledge of the arbitrability of its license defense since the day Wi-LAN filed its Complaint (October 3, 2012), but instead of proceeding to arbitrate as mandated by the PLA (or even informally raising the issue with Wi-LAN), LG improperly pursued its summary judgment motion in the Florida Action and by filing this action in an end run around the "first-filed" Florida Court.

**Second Factor:**  Furthermore, the second factor ("amount of litigation to date") also favors Wi-LAN because not all of Wi-LAN's claims are *arbitrable*.  Accordingly, Wi-LAN properly sought to proceed with litigation on the *nonarbitrable* issues as is its right to absent any stay by this Court.  As set forth in detail in Wi-LAN's Opposition to LG's Renewed Motion for Summary Judgment of Non-Infringement Based on License (Florida Dkt. No. 65), the PLA does <u>not</u> cover the accused televisions involved in this instant action.[2]  Wi-LAN could not have

---

[2] LG continues to assert in its Motion, as in other papers filed with the Florida Court, that the complaints filed by Wi-LAN only accuse of infringement a single product line of LG.  LG's repeating of this false statement does not make the statement any less false.  In each instance, the complaints filed by Wi-LAN broadly accused LG products of infringement and *gave as an example*, one particular line of LG products.  The Florida Action case is not and

acted on its arbitration right until LG first invoked the PLA and its arbitration provision claiming that the accused televisions were licensed under the PLA in its Motion for Summary Judgment Fla. Action, Dkt. No. 22.  Once filed, Wi-LAN immediately moved to compel arbitration.

LG also claims that Wi-LAN acted inconsistent with its intent to arbitrate by pursuing discovery and following the Courts rules by filing its required disclosures and reports.  However, these actions are *not* inconsistent with arbitration.  Unlike LG, Wi-LAN has no desire to ignore its obligations under the Federal Rules of Civil Procedure.  *See, e.g., T.W. Oil (Houston), Inc. v. BP Shipping Ltd.*, 1986 WL 977, *5 (S.D.N.Y. Jan. 15, 1986) (participation in pre-trial conferences was "in deference to this Court's authority" and was not inconsistent with arbitration right);  *Shaw v. Carnival Cruise Lines*, 2011 U.S. Dist. LEXIS 58704, *17 (S.D. Fla. May 31, 2011) ("Any participation in discovery after the filing of its Motion [to compel arbitration] is not necessarily inconsistent with the desire to arbitrate and may be explained by Defendant's desire not to draw the ire of this Court by ignoring deadlines set in the Scheduling Order").  Even if the PLA covers accused televisions *with* Wi-Fi (*i.e.,* such products are licensed), which it does not, LG cannot and does not argue that the PLA covers accused televisions *without* Wi-Fi.  Hence, litigation must continue on those claims.  Discovery is warranted as there clearly are *nonarbitrable* issues regarding the infringement of televisions without Wi-Fi and Wi-LAN's actions in furtherance of litigation are directly related to those *nonarbitrable* issues.  For at least these reasons, Wi-LAN has not participated in litigation to a point inconsistent with its intent to arbitrate nor acted inconsistently with that arbitration right.

**Third Factor:**  Finally, the third factor (prejudice) also favors Wi-LAN.  Despite its protests, LG has not suffered any prejudice by Wi-LAN's actions in this lawsuit because Wi-

---

never has been limited to a single product or a single product line.  Rather, all infringing products are implicated, the totality of which will be determined through discovery.

LAN invoked its right to arbitrate as soon as LG triggered the arbitration issue by filing its

Motion for Summary Judgment arguing a license defense based on the PLA.  *See, e.g., Thyssen, Inc.*, 310 F.3d at 106 (finding no waiver of right to arbitrate because no prejudice shown).

Accordingly, LG cannot reasonably accuse Wi-LAN of any unnecessary delay.  *See REDF Organic Recovery, LLC*, 2012 U.S. Dist. LEXIS 165390 at *14 ("Kafin invoked his right to arbitration as soon as the Florida Court determined that he was a party to the License Agreement. Therefore Defendant cannot be accused of causing Plaintiff to incur unnecessary delay.")

Moreover, as LG's license defense has not yet been litigated, Wi-LAN cannot be accused of re-litigating any issue through arbitration.  *Id.*

Furthermore, LG cannot possibly be prejudiced because it has steadfastly refused to engage in any discovery despite its obligation to do so.  LG has not cooperated in preparing a Rule 26(f) report, refuses to serve Initial Disclosures and refuses to respond to Wi-LAN's interrogatories and documents requests which seek discovery on nonarbitrable issues. *See, e.g., Scott v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1992 WL 245506, *4 (S.D.N.Y. Sept. 14, 1992) (holding that non-moving party cannot be prejudice by the service of discovery if it has not responded);  *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1257-58 (S.D. Fla. 2009) (holding that non-moving party cannot be prejudice by the service of discovery if it has not responded).  For at least these reasons, Wi-LAN has not waived its right to arbitrate.

### b. *Wi-LAN's Arbitration Demand Falls Squarely Within the Scope of the Mandatory Arbitration Provision*

As with LG's waiver argument, LG's argument that Wi-LAN should be enjoined from proceeding with the JAMS arbitration "because LG is likely to success on the merits in showing that the arbitration provision is not applicable here because Wi-LAN chose to employ the 'injunctive/equitable relief in a judicial forum' provision of the 2010 PLA by filing the Florida

Action" (Motion at p. 19) is also properly determined by the JAMS arbitrator and is equally meritless. Whether LG's argument that "neither Wi-LAN nor LG is obligated to arbitrate the claims that Wi-LAN now seeks to arbitrate" (*id.*) is correct is an argument that goes to the parties' *interpretation* of the arbitration provision, which the parties clearly and unmistakably agreed to arbitrate.  Moreover, the parties' dispute over the interpretation of the word "wireless" falls squarely within the mandatory arbitration provision of the 2010 PLA.  Wi-LAN again addresses first the issue of who decides the issue of interpreting the arbitration provision – this Court or the JAMS arbitrator – and then turns to the merits.

> ### i.   Whether Wi-LAN's Arbitration Demand is Beyond the Scope of the Arbitration Provision Is a Matter of Contract Interpretation Decided By the Arbitrator

As discussed above, the Supreme Court has distinguished between "questions of arbitrability," which are presumptively for a court to decide, and other "gateway matters," which are presumptively for an arbitrator's resolution. *Mulvaney Mechanical, Inc.*, 351 F.3d at 45 *quoting Howsam*, 537 U.S. at 83-85.  LG's argument that "neither Wi-LAN nor LG is obligated to arbitrate the claims that Wi-LAN now seeks to arbitrate" (Motion at p. 19) is a "question of arbitrability" because it is an argument "whether an arbitration clause in a concededly binding contract applies to a particular controversy," the controversy being whether LG's ***interpretation*** of the PLA arbitration provision in this manner is correct.  *Id.* (internal citations omitted).  This "question of arbitrability" is to be decided by the court unless "there is clear and unmistakable evidence from the arbitration agreement… that the parties intended that [they] be decided by the arbitrator." *Bell*, 293 F.3d at 566 (internal quotations omitted).

The question of whether the parties agreed to arbitrate arbitrability is decided under state law, which according to the PLA's governing law provision is New York.  *See Bell*, 293 F.3d at

569; *see also* NY Action, Dkt. No. 2, Ex. A, ¶ 8.2.  Parties to an arbitration agreement "may

provide that the arbitrator, not the court, shall determine whether an issue is arbitrable."  *Bell*,

293 F.3d at 566, *quoting PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2nd Cir. 1996).  The

issue of arbitrability is properly "referred to the arbitrator if there is clear and unmistakable

evidence from the arbitration agreement … that the parties intended that the question of

arbitrability shall be decided by the arbitrator."  *Bell*, 293 F.3d at 566 (internal citation and

quotations omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643,

649 (1986) (same).  Such "clear and unmistakable evidence" is present here.

>    The arbitration provision states in relevant part:



NY Action, Dkt. No. 2, Ex. A, ¶ 8.3 (emphasis added).  Moreover, the relevant JAMS Rule at

issue, Rule 11(c), expressly states:

> Jurisdictional and arbitrability disputes, including disputes over the formation,
> existence, validity, ***interpretation or scope*** of the agreement under which
> Arbitration is sought, and who are proper parties to Arbitration, shall be submitted
> to and ruled on by the Arbitrator. ***The Arbitrator has the authority to determine***
> ***jurisdiction and arbitrability issues as a preliminary matter.***

*See* JAMS Comprehensive Arbitration Rules & Procedures, Rule 11 (Oct. 1, 2010) (emphasis

added).  By specifically incorporating the JAMS Rules into the parties' arbitration provision

███████████████████████████████████████████████████████████

████████████████████ the parties have "clearly and unmistakably" agreed that the issue of the

arbitrability of contract ***interpretation*** is to be arbitrated and *not* decided by this Court.  *See, e.g.,*

*Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 210 (2d Cir. 2005) (incorporation of AAA

rules giving jurisdiction to the arbitrator "provides clear and unmistakable evidence of the parties' intent to arbitrate issues of arbitrability").[3]  Accordingly, because (1) LG's "injunctive/equitable relief" argument goes to the proper *interpretation* of the arbitration provision, (2) the parties have expressly incorporated the JAMS rules into the PLA, (3) those Rules expressly provide for the arbitrator to decide arbitrability disputes, including over the *interpretation* of  the PLA, the parties have unquestionably given their "clear and unmistakable" intent to let the JAMS arbitrator decide this issue.

> ### ii.    Wi-LAN's Demand for Arbitration to Interpret the Meaning of "Wireless" Falls Squarely Within The Bounds of the Arbitration Provision

Contrary to LG's argument, the parties' license dispute over the proper interpretation of the word "wireless" in the 2010 PLA falls squarely within the mandatory arbitration provision of that same agreement, which requires that: ███████████████████████████

███████████████████████████████████████████████

███████████████████████████ NY Action, Dkt. No. 2, Ex. A, ¶ 8.3 (emphasis added).  In the Florida Action, LG filed a summary judgment motion alerting Wi-LAN *for the first time* to LG's argument that it does not infringe the Patents-in-Suit because the accused televisions have Wi-Fi and are, therefore, "wireless" products licensed by the PLA.  Wi-LAN disagreed and promptly moved to compel arbitration.  It could not be simpler or clearer that

---

[3] *See also Rafferty v. Xinhua Fin. Ltd.*, 2011 WL 335312 at *5 (S.D.N.Y. Jan. 31, 2011) ("incorporation of the Commercial Arbitration Rules serves as clear and unmistakable evidence of the parties' intent to arbitrate the question of arbitrability"); *see also Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001) (same) *aff'd on other grounds*, 312 F.3d 1349 (11th Cir. 2002); *see also Sidell v. Structured Settlement Investments, LP*, 2009 U.S. Dist. LEXIS 2244, *6-7 (D. Conn. Jan. 14, 2009) (arbitration provisions incorporated JAMS Rules providing that arbitrators will determine their own authority, which was sufficient "evidence of the parties' intent to arbitrate arbitrability"); *see also Monex Deposit Co. v. Gilliam*, 616 F. Supp. 2d 1023, 1025 (C.D. Cal. 2009) (arbitration agreement "incorporates JAMS Rules providing that the arbitrator decides scope and validity disputes with respect to particular claims."); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed. Cir. 2006) (incorporation of AAA arbitration rules was "unmistakable evidence" the parties intended arbitrability to be arbitrated).

this dispute over the parties' respective **_interpretation_** of the word "wireless" **_must_** be arbitrated in accordance with the mandatory ("**_shall_** be finally settled by arbitration") arbitration provision.

Moreover, the arbitration provision clearly states that, ██████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ *See* PLA, ¶ 8.3, *supra* p. 3 (emphasis added).

However, the fact that Wi-LAN has the optional right under the PLA arbitration provision to continue to pursue its patent infringement claims "in lieu of, in addition to, or prior to initiation of any arbitration," does *not* mean either it or LG can avoid the mandatory nature of the arbitration clause *requiring* arbitration of the contract interpretation issue whether LG was licensed to the patents Wi-LAN accuses it of infringing. Nor does this contractual right divest the Florida Court from exercising its discretion to stay Wi-LAN's patent claims pending resolution of the JAMS arbitration.

Additionally, LG's statement "Wi-LAN cannot choose to litigate and arbitrate the same dispute at the same time" (Motion at p. 20) misapprehends the nature of Wi-LAN's actions. Wi-LAN is **_not_** "choosing" to arbitrate. It is contractually **_obligated_** to arbitrate those issues that fall within the scope of the mandatory arbitration provision. Moreover, LG clearly misunderstands that Wi-LAN is **_not_** litigating and arbitrating the same dispute at the same time. As discussed more fully Section IV(B)(2)(c) *infra*, the issues Wi-LAN raises in arbitration are not the same as those in the Florida Action. The sole focus of the JAMS arbitration is the interpretation of the term "wireless" in the 2010 PLA whereas the merits of Wi-LAN's infringement claims are solely

within the province of the Florida Action.[4]  Accordingly, LG's "injunctive/equitable relief"

argument is properly decided by the JAMS arbitrator and is, in any event, without merit.

### c. *Wi-LAN's Arbitration Demand Does Not Violate the Claim-Splitting Doctrine Because Wi-LAN Has Not Asserted the Same Claims in the Florida Litigation*

LG's argument that Wi-LAN should be enjoined from proceeding with the JAMS

arbitration "because Wi-LAN asserted the same claims (or causes of action) in the Florida

Litigation" fails for at least three reasons: (1) LG misconstrues the facts before this Court; (2) LG

ignores Second Circuit authority that supports Wi-LAN's right to arbitrate claims arising out of

the arbitration provision while seeking to litigate claims that are outside the scope of such

provision; and (3) the majority of legal authority that LG cites is not binding on this Court and is

distinguishable from the instant action.

First, LG claims that Wi-LAN is "pursuing its patent infringement claims in the Southern

District of Florida while simultaneously pursuing the same claims in the New York Arbitration."

New York Action, Dkt. No. 6, at p. 22.  This is untrue.  Wi-LAN's Demand for Arbitration seeks

arbitration based solely on the issue of contract interpretation.  In its Demand for Arbitration,

"Wi-LAN requests that the arbitrator determine the proper interpretation of the PLA." Dallow

Decl. ¶ 2, Ex. A.  Wi-LAN did not request arbitration on, nor will the arbitrator address, any

issues on the merits of the infringement, validity or infringement of the Patents-in-Suit with

respect to any of the accused televisions (with or without Wi-Fi).  The sole issue before the

---

[4] The case that LG cites for support of this argument is inapposite.  In *Satcom*, the relevant arbitration provision included "provisions that permit the parties to choose either litigation or arbitration under certain circumstances," which the plaintiff sought to take advantage of to relitigate in arbitration the **same** claims it lost on preliminary injunction motion in litigation. *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 333 (S.D.N.Y. 1999).  Here, Wi-LAN clearly is not seeking to relitigate in arbitration the same claims it lost in district court litigation.  Moreover, the *Satcom* court found that all three prejudice factors favored a finding of waiver: (1) Satcom engaged in extensive discovery not available in arbitration, (2) filed a motion for preliminary injunction going to the merits of an adversary's claims, and (3) Orbcomm expended a substantial amount of money in attorneys' fees opposing the preliminary injunction. *Id.* at 340-41.  Here, as discussed above, none of these prejudice factors are present.

arbitrator is the "interpretation of the Patent License Agreement." Thus, LG's argument fails.

*Id.*

Additionally, Second Circuit law supports Wi-LAN's right to arbitrate claims arising out of the arbitration provision while litigating claims that are outside the scope of such provision should the Florida Court decide not to stay the non-arbitrable claims. This District has held that:

> Arbitration is, however, a matter of contract, and the contours of the arbitrator's authority in a given case are determined by reference to the arbitral agreement. Parties to such an agreement cannot be required to submit to arbitration any matter that they did not agree to be subject to that manner of dispute resolution . . . . A party who consents to the inclusion in a contract of a limited arbitration clause does not thereby waive his right to a judicial hearing on the merits of a dispute not encompassed within the ambit of the clause.

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 764 F. Supp. 43, 46 (S.D.N.Y. 1991) *quoting Davis v. Chevy Chase Financial Ltd.,* 667 F.2d 160, 165 (D.C. Cir. 1981) (citation omitted)). In addition, "arbitration cannot be raised as a bar to claims falling outside the arbitration agreement." *Id. quoting Williams v. E.F. Hutton & Co.,* 753 F.2d 117, 119 (D.C. Cir. 1985) (citation omitted); *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985) (agreements to arbitrate are rigorously enforced, "even if the result is 'piecemeal' litigation.").[5]

Here, the arbitration provision expressly provides that the issues before the arbitrator are

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████     New York Action, Dkt. No. 2, Exhibit A at ¶ 8.3 (emphasis added). Wi-LAN's

---

[5] *See also Nilsen v. Prudential-Bache Sec.*, 761 F. Supp. 279, 288 (S.D.N.Y. 1991) (holding "[a]lthough this order will split plaintiff's claims between two forums, the possible inefficiency of resulting parallel proceedings is a consequence of the Arbitration Act itself. The possibility of parallel proceedings occurs because the relevant federal law *requires* piecemeal resolution when necessary to effect to an arbitration agreement.") (internal citations and quotations omitted) (emphasis in original); *Danny's Const. Co., Inc. v. Birdair, Inc.*, 136 F. Supp. 2d 134, 146 (W.D.N.Y. 2000) (concluding that Birdair's arbitration demand does not amount to claim-splitting, holding that "the inconvenience and difficulty associated with addressing related issues in separate litigation and arbitration do not preclude the enforcement of an arbitration agreement.")

claims for patent infringement clearly fall outside of the scope of the arbitration agreement, and therefore, it is within Wi-LAN's rights under the PLA and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to pursue arbitration on the sole issue of contract interpretation while litigating its non-arbitrable claims for patent infringement should the Florida Court not stay the case.

Finally, the cases cited by LG, most of which are not binding on this Court, do not involve analogous situations as here where one party seeks to arbitrate an issue of contract interpretation while also litigating patent infringement claims that are non-arbitrable.[6]  Thus, LG's argument that Wi-LAN should be enjoined from proceeding with the JAMS arbitration "because Wi-LAN asserted the same claims (or causes of action) in the Florida Litigation" fails.

### 3.    The Balance of Hardships Favors Wi-LAN

LG's claim that "the balance of hardships tips decidedly in LG's favor because allowing the arbitration to continue would reward Wi-LAN for its vexatious initiation of duplicative proceedings," (New York Action, Dkt. No. 6, at p. 29) is limited to a one paragraph argument that cites one distinguishable case in support.  LG's claims that it "has sustained and will continue to suffer" irreparable harm are erroneous for the reasons discussed in Section IV.(B)

---

[6] The *AmBase* case involved a suit where, unlike here, the plaintiff first filed a complaint in Delaware and subsequently filed a virtually identical complaint in New York. *See AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003).  The *Katz* case is also distinguishable because it involved two parties to a merger agreement, Katz and Infinity, who separately filed suit on the same issues and Infinity attempted to join Katz's case after most of its claims were dismissed. *See Katz v. Gerardi*, 655 F.3d 1212, 1214 (10th Cir. 2011). Clearly, these facts are not present here.  Third, the *Kim* case is inapposite because, unlike here, it involved an attempt by the plaintiff to circumvent the Court's dismissal of her motion to amend to include additional accused products by filing a second duplicative lawsuit. *See Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929, 930-34 (N.D. Ill. 2006).  Fourth, the *Fujitsu Ltd.* is unavailing because it involved a patent infringement case where Fujitsu Limited attempted to file a complaint alleging infringement of four patents of which it had previously alleged infringement in a separate case before the same court – also facts not present here. *See Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2013 WL 361810, *1 (N.D. Ill. Jan. 30, 2013).  Fifth, LG's reliance on the *Single Chip* case is also misplaced because that case involved two separate patent infringement suits, involving "substantially the same evidence" and alleging "infringement of the same patent by the same products." *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1065 (S.D. Cal. 2007).  Of course, there is only one patent case here. Finally, the *Mars* case involved a patent infringement suit where Mars initially brought suit and obtained judgment on a subsidiary and subsequently brought a separate infringement suit based on the same underlying cause of action against the parent company. *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995). Again, *Mars* is a case with circumstances completely different from the Florida Action.

*supra.*  The one case LG cites for support, *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411

(S.D.N.Y. 1999), is distinguishable because in *Tradescape.com* the court found that "the

requirement of immediate and irreparable injury is readily satisfied in this case."

*Tradescape.com,* 77 F. Supp. 2d at 440.  By stark contrast, LG has not come close to making the

required clear showing of irreparable harm.

Wi-LAN waited only *two weeks* after LG raised its license defense, which is the first time

the arbitration provision of the PLA was implicated in this case.  Moreover, LG misleadingly

states that "the claims (*i.e.,* cause of actions) asserted in the Florida Litigation are the same as the

claims asserted in the New York Arbitration."  As discussed in Section IV(B)(2)(c) *supra*, the

arbitration is solely limited to interpretation of the PLA and the merits of patent infringement

with respect to all of the accused televisions (both with and without WiFi), and the validity and

enforceability of the patents will *not* be addressed by the arbitrator.  Therefore, the contract

interpretation "claim" asserted in arbitration is completely different than the claims of patent

infringement asserted in the Florida Action.

Moreover, LG disingenuously states that "the Florida Litigation has progressed

significantly."  LG has not even filed an Answer in the Florida Action.  The parties have not held

a Rule 26(f) conference.  No case management conference has taken place and no case schedule

has been entered.  LG has served neither initial disclosures nor any discovery.  LG has not

responded to Wi-LAN's first set of discovery and neither party has taken any depositions.  To

the contrary, the Florida Action has not progressed past the initial pleading stage.

Furthermore, LG baldly claims that Wi-LAN cannot reasonably argue that it would be

prejudiced by the Court enjoining arbitration.  However, Wi-LAN would indeed suffer

irreparable harm by the deprivation of its fully bargained for, contractual right to arbitration.

*See, e.g., Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.,* 962 F. Supp. 385, 391 (S.D.N.Y.1997) (party suffers irreparable harm "if it is deprived of its federal and state contractual right to arbitrate its disputes."). The deprivation of the right to arbitrate is of particular weight in light of "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir. 2001). For at least this reason, the balance of hardships favors Wi-LAN.

### C. LG Should Be Required to Post a Bond

This Court may "issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Rule 65(c)'s bond requirement serves a number of functions. For example, "[i]t assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff." *Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011) (requiring posting of $500,000 bond as condition for obtaining injunction). In the event this Court grants LG's Motion and absent the posting of a bond, Wi-LAN will suffer harm by not being able to obtain the benefit of its contractual bargain with respect to the 2010 PLA arbitration provision and continue with the arbitration underway at JAMS. Accordingly, Wi-LAN requests that this Court enter an appropriate bond.

## V.   CONCLUSION

For the forgoing reasons, Wi-LAN respectfully requests that this Court deny LG's Motion for Temporary Restraining Order and Preliminary Injunction.

Dated:  April 11, 2013                    Respectfully submitted,

                                          *Attorneys for the Defendants*

                                          KILPATRICK TOWNSEND & STOCKTON LLP


                                          By:   /s/ Frederick L. Whitmer

                                          Frederick L. Whitmer
                                          KILPATRICK, TOWNSEND & STOCKTON LLP
                                          The Grace Building
                                          1114 Avenue of the Americas
                                          New York, NY 10036-7703
                                          Telephone: (212) 775-8700
                                          Facsimile: (212) 775-8800
                                          fwhitmer@kilpatricktownsend.com

                                          David E. Sipiora
                                          Brian P. O'Donnell (*pro hac vice* to be filed)
                                          Kent T. Dallow (*pro hac vice* to be filed)
                                          KILPATRICK, TOWNSEND & STOCKTON LLP
                                          1400 Wewatta Street, Suite 600
                                          Denver, CO 80202
                                          Telephone: (303) 571-4000
                                          Facsimile: (303) 571-4321
                                          dsipiora@kilpatricktownsend.com
                                          bodonnell@kilpatricktownsend.com
                                          kdallow@kilpatricktownsend.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2013, a true and correct copy of the foregoing was filed and served with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Edlin
Greenberg Traurig LLP
200 Park Avenue
New York, NY 10166

James H. Donoian
Greenberg Traurig LLP
200 Park Avenue
New York, NY 10166

Richard D. Harris
Greenberg Traurig LLP
77 West Wacker Drive
Suite 3100
Chicago IL 60601

Matthew J. Levinstein
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago ILL 60601

James J. Lukas, Jr.
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago ILL 60601

Eric J. Maiers
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100

By:   /s/ Frederick L. Whitmer
        Frederick L. Whitmer

27