UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LG ELECTRONICS, INC. and
LG ELECTRONICS U.S.A., INC.,

        Plaintiffs,

        v.

WI-LAN USA, INC. and WI-LAN INC.,

        Defendants.

Case No. 13-cv-2237 (RA)

**PLAINTIFFS LG ELECTRONICS, INC. AND LG ELECTRONICS U.S.A., INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS
WI-LAN USA, INC. AND WI-LAN INC.'S MOTION TO COMPEL ARBITRATION**

Richard A. Edlin (edlinr@gtlaw.com)
James H. Donoian (donoianj@gtlaw.com)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)

Richard D. Harris (*pro hac vice* to be filed)
James J. Lukas, Jr. (*pro hac vice* to be filed)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

*Attorneys for Plaintiffs LG Electronics, Inc. and LG
Electronics U.S.A., Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION................................................................................................1

II.   STATEMENT OF FACTS ................................................................................3

      A.  Wi-LAN Agressively Litigates the Underlying Patent Infringement Action ......................3

      B.  LG Files a Case Dispositive Motion for Summary Judgment of Non-Infringement
          Based on License ................................................................................................6

      C.  Wi-LAN Subsequently Demands and Commences Arbitration in This District.................7

      D.  Wi-LAN and LG Settle the Prior Litigation and Enter into the Agreement ........................9

III.  LEGAL STANDARDS....................................................................................10

      A.  Waiver of the Right to Arbitrate ......................................................................10

      B.  A Court, and Not an Arbitrator, Decides Issues of Arbitrability. ......................................12

IV.   ARGUMENT ..................................................................................................13

      A.  The Court Should Deny Wi-LAN's Motion to Compel Arbitration Because
          Wi-LAN Waived Its Right to Arbitrate. ..............................................................13

      B.  Wi-LAN's Arbitration Demand Is Beyond the Scope of the Mandatory
          Arbitration Provision Because Wi-LAN and LG Chose to Pursue
          Injunctive/Equitable Relief in a Judicial Forum by Filing the Florida Litigation
          and by Moving for Summary Judgment, Respectively.....................................21

      C.  Wi-LAN's Arbitration Demand Violates the Claim Splitting Doctrine
          Because Wi-LAN Asserted the Same Claims (or Causes of Action) in
          the Underlying Litigation.................................................................................22

V.    CONCLUSION………………………………………………………………........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re ABN Int'l Capital Mts. Corp.*,
   812 F. Supp. 418 (S.D.N.Y. 1993) ................................................................................ 11

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
   326 F.3d 63 (2d Cir. 2003) ......................................................................................... 23

*Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd.*,
   610 F. Supp. 2d 226 (E.D.N.Y. 2009) .............................................................. 10, 11, 13

*AT&T Tech., Inc. v. Comm. Workers of Am.*,
   475 U.S. 643 (1986) .................................................................................................. 13

*Banc of Am. Secs. LLC v. Independence Tube Corp.*,
   Case No. 09C 7381, 2010 WL 1780321 (N.D. Ill. May 4, 2010) ......................................... 11

*Cotton v. Slone*,
   4 F.3d 176 (2d Cir. 1993) ..................................................................................... 16, 18

*Doctor's Assocs., Inc. v. Distajo (Distajo I)*,
   66 F.3d 438 (2d Cir. 1995) ........................................................................................ 10

*Doctor's Assocs., Inc. v. Distajo (Distajo II)*,
   107 F.3d 126 (2d Cir. 1997) ...................................................................................... 12

*Faulkner v. Verizon Commc'n, Inc.*,
   156 F. Supp. 2d 384 (S.D.N.Y. 2001) ............................................................................ 3

*Foster v. Hallco Mfg. Co., Inc.*,
   947 F.2d 469 (Fed. Cir. 1991) ................................................................................... 24

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
   Case No. 12C3229, 2013 U.S. Dist. Lexis 12142 (N.D.Ill., Jan. 30, 2013) ........................... 23

*Gilmore v. Shearson/Am. Express Inc.*,
   811 F.2d 108 (2d Cir. 1987) .................................................................................. 12, 17

*Grigsby & Assocs., Inc. v. M Sec. Inv.*,
   664 F.3d 1350 (11th Cir. 2011) .................................................................................... 0

*Guzman v. U.S.*,
   Case No. 11 Civ. 5834 (JPO), 2013 WL 543343 (S.D.N.Y. Feb. 14, 2013) ............................ 3

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ................................................................................................ 12

*Kanciper v. Suffolk County Soc. For Prevention of Cruelty to Animals, Inc.*,
    Case No. 12–CV–2104 (ADS)(ARL), 2013 WL 673740 (E.D.N.Y. Feb. 23, 2013).............. 23

*Katz v. Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) .......................................................................... 23

*Kim v. Sara Lee Bakery Group, Inc.*,
    412 F. Supp. 2d 929 (N.D. Ill. 2006) ................................................................. 23

*La. Stadium & Exposition v. Merrill Lynch & Co.*,
    626 F.3d 156 (2d Cir. 2010) ........................................................................... 1, 11

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*,
    58 F.3d 616 (Fed. Cir. 1995) ............................................................................. 24

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*,
    105 F.3d 1192 (8th Cir. 1997) ........................................................................... 18

*Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*,
    107 F.3d 979 (2d Cir. 1997) .............................................................................. 18

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    Case No. 09MD 2030, 2010 U.S. Dist. Lexis 12764 (S.D.N.Y. Feb. 8, 2010) ............... 11, 15

*Morgan Stanley & Co, Inc. v. Seghers*,
    Case No. 10 Civ. 5378 (DLC), 2010 U.S. Dist. LEXIS 107686 (S.D.N.Y. Oct. 8, 2010) ...... 24

*Oldroyd v. Elmira Savings Bank*,
    134 F.3d 72 (2d Cir. 1998) ............................................................................ 12, 21

*PPG Indus., Inc. v. Webster Auto Parts Inc.*,
    128 F.3d 103 (2d Cir. 1997) ........................................................................... 11, 15

*S&R Co. of Kingston v. Latona Trucking, Inc.*,
    159 F.3d 80 (2d Cir. 1998) ...................................................................... 10, 11, 16

*Satcom Int'l. Group PLC v. Orbcomm Int'l Partners, L.P.*,
    49 F. Supp. 2d 331 (S.D.N.Y. 1999) *aff'd*, Case No. 99-7638, 1999 U.S. App. Lexis 32546
    (2d Cir. Dec. 15, 1999) ............................................................................... *passim*

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007) .............................................................. 23

*State of New York v. Oneida Indian Nation of N. Y.*,
    90 F.3d 58 (2d Cir. 1996) .................................................................................. 12

*In re Suprema Specialities, Inc.*,
   Case No. 07-4100, 2008 WL 2629476 (2d Cir. July 1, 2008) ................................ 11

*Tech. in P'ship v. Rudin*,
   No. 12-cv-3699, 2013 WL 518374 (2d Cir. Sept. 17, 2013) ................................ 12

*UBS Sec. LLC v. Voegeli*,
   684 F. Supp. 2d 351 (S.D.N.Y. 2010) ................................................................ 18

*United Parcel Serv. v. Lexington Ins. Group*,
   No. 12-cv-7961 (SAS), 2013 WL 1897777 (S.D.N.Y. May 7, 2013) .................... 13

*Wi-LAN Inc. v. LG Elecs. Inc.*,
   Case No. 1:12-cv-23611-JAL, S.D.Fla., Dkt. 1 .................................................... 3

*Woodard v. Sage Prods., Inc.*,
   818 F.2d 841 (Fed. Cir. 1987) ............................................................................ 21

**Federal Statutes**

9 U.S.C. § 4 .............................................................................................................. 8

**Rules**

Fed. R. Evid. 201 ...................................................................................................... 3

## I.    INTRODUCTION

More than a year has passed since Defendants Wi-LAN USA, Inc. and Wi-LAN Inc. (collectively "Defendants" or "Wi-LAN") filed its complaint in the Southern District of Florida ("Florida Litigation").   That complaint charged Plaintiffs LG Electronics, Inc. and LG Electronics, U.S.A., Inc. (collectively "LG") with infringement of two **licensed** patents over a single product line of **licensed** LG televisions with built in Wi-Fi.   Two years after Wi-LAN executed the agreement to license the asserted patents, and four months after filing suit against LG, Wi-LAN initiated an arbitration with JAMS in New York City ("NY Arbitration")[1] over the same patents and products, while seeking to continue the Florida Litigation (now transferred to the District of New Jersey).   The Second Circuit has consistently held that a plaintiff **waives** its right to arbitrate under these circumstances:

> Lastly, **it is significant that LSED is a plaintiff, rather than a defendant, moving for arbitration**. . . .  [W]e also note that by filing its lawsuit and litigating it at length, LSED "acted inconsistently with its contractual right to arbitration." . . . If LSED had sufficient information to hale MLPFS into federal court, it should also have been aware that it could arbitrate its claims against MLPFS. . . .  **But a litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court.**

*La. Stadium & Exposition v. Merrill Lynch & Co.*, 626 F.3d 156, 160-61 (2d Cir. 2010) (internal citations omitted) (emphasis added).

> The touchstone of waiver is the taking of action inconsistent with the right to arbitrate.  Customarily, waiver is urged against the defendant and the inquiry for the court is whether the defendant litigated enough and the other side has suffered sufficient prejudice such that the defendant's waiver of the right to arbitrate may be inferred.  **Rarely does a plaintiff begin a litigation on the merits and then alter course and attempt to compel an arbitration.**

*Satcom Int'l. Group PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 341 (S.D.N.Y. 1999) *aff'd*, Case No. 99-7638, 1999 U.S. App. Lexis 32546 (2d Cir. Dec. 15, 1999) (emphasis

---

[1] Wi-LAN initiated the arbitration in direct response to LG's case-dispositive motion for summary judgment of non-infringement based on the license Wi-LAN granted LG on the asserted patents two years earlier.

added).  In contrast to *La. Stadium* and *Satcom*, ***every case*** Wi-LAN relies upon in its waiver

analysis is inapposite because each case involves a ***defendant*** moving to compel an arbitration in

which the court held that the ***defendant*** did not waive its arbitration right.  (*See* Wi-LAN Mot. to

Compel, Dkt. No. 39 at 15-19.)

Wi-LAN's vexatious litigation conduct further compels a finding of waiver.  Wi-LAN's

conduct has wasted judicial resources and has driven up LG's legal costs.  Wi-LAN's repeated

position reversals reflect an intentional scheme to prejudice LG:

- Wi-LAN granted LG a license to the asserted patents for wireless products three years ago.  The license contained the arbitration clause upon which Wi-LAN now asks the Court to compel arbitration.  ***Then, more than a year ago, Wi-LAN filed a patent infringement lawsuit against LG in which Wi-LAN accused products it knew were wireless.***

- Wi-LAN initiated and actively participated in the underlying patent infringement lawsuit against LG.  ***Then, Wi-LAN moved to compel arbitration and commenced an arbitration on the same matter, only after LG raised the issue of license in its case-dispositive summary judgment motion.***

- Wi-LAN twice opposed LG's motion to transfer venue from the District of Florida to the District of New Jersey.  ***Then, seven months later (after LG's motion to transfer venue was filed, re-filed, and fully briefed twice), Wi-LAN withdrew its opposition to LG's motion, and the case was transferred.***

- Wi-LAN served written discovery and opposed LG's multiple requests for a stay, forcing LG to file and re-file several motions for a stay of discovery and for a protective order.  ***Then, months later (again, after LG's motions were filed, re-filed, and fully briefed), Wi-LAN agreed to a stay of discovery.***

- Wi-LAN brought a motion to compel the NY Arbitration in the Florida court, forcing LG to respond to that motion, to file an action and to move this Court to enjoin the arbitration (that was opposed by Wi-LAN in both the Florida Litigation and here).  ***Then, months later, after briefing was closed, Wi-LAN agreed that this Court was the only court that could decide whether to compel or enjoin the NY Arbitration.***

If the Court grants Wi-LAN's motion to compel arbitration, Wi-LAN will continue to

abuse the legal system by litigating its claims in both federal court ***and*** before an arbitrator,

resulting in a further waste of judicial resources and unfair prejudice to LG.  Accordingly, the

Court should deny Wi-LAN's motion to compel and prohibit Wi-LAN from proceeding with the

NY Arbitration because Wi-LAN *waived* its right to arbitrate.[2] There are two additional reasons why the Court should deny Wi-LAN's motion to compel arbitration. The Court should deny Wi-LAN's motion because the license agreement does ***not*** require arbitration. Wi-LAN chose to employ the "equitable/injunctive relief in a judicial forum" provision of the agreement by initiating the Florida Litigation instead of arbitration. In fact, LG chose to employ that very same provision by raising its equitable license defense. Moreover, the Court should not compel arbitration because Wi-LAN's arbitration demand violates the claim splitting doctrine. Specifically, Wi-LAN has improperly asserted the same claims in the Florida Litigation as in the NY Arbitration. Finally, the Court, and not the arbitrator, should rule on these matters and determine, what, if any, claims should be decided by the arbitrator.

## II.     STATEMENT OF FACTS

### A.     Wi-LAN Agressively Litigates the Underlying Patent Infringement Action

Wi-LAN filed its original complaint against LG in the Southern District of Florida alleging infringement of U.S. Patent Nos. 6,359,654 and 7,034,889 (collectively, the "Patents-in-Suit") on October 3, 2012. (*See generally Wi-LAN Inc., v. LG Elecs. Inc.,* Case No. 1:12-cv-23611-JAL, S.D.Fla., Dkt. 1.)[3] Wi-LAN's complaint requested a jury trial, an award of damages, and further sought both preliminary and permanent injunctive relief. (*Id.*) LG responded to Wi-LAN's original complaint on January 25, 2013 by moving for summary judgment of noninfringement based on license, to dismiss Wi-LAN's inducement of infringement claims, and to transfer venue to the District of New Jersey. (*See* Florida Litigation,

---

[2] LG incorporates its Complaint (*see* Dkt. No. 2) and its Memorandum in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction (*see* Dkt. No. 6), including the legal and factual bases for the Court to issue an injunction enjoining the New York Arbitration.

[3] Federal Rule of Evidence 201 permits a district court to take judicial notice of facts that are "generally known within the trial court's territorial jurisdiction; . . . or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. "It is common and entirely proper for courts to take judicial notice of other court proceedings." *Guzman v. U.S.,* Case No. 11 Civ. 5834 (JPO), 2013 WL 543343, at *3 (S.D.N.Y. Feb. 14, 2013) (*citing Faulkner v. Verizon Commc'n, Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001)).

Dkts. 22, 25, 30.)

Wi-LAN served its First Set of Interrogatories and its First Set of Requests for the Production of Documents and Things (collectively "Written Discovery") on February 5, 2013, immediately after the parties held a Rule 26 Conference. (**Ex. 1**, Wi-LAN's First Set of Interrogs. (Nos. 1-12), Feb. 5, 2013; **Ex. 2**, Wi-LAN's First Set of Reqs. for Produc. of Docs. and Things (Nos. 1-41), Feb. 5, 2013.) Wi-LAN then filed a demand for arbitration before JAMS in New York City on February 8, 2013, four months after filing its original complaint and only after LG filed its summary judgment motion. (**Ex. 3**, Demand for Arbitration, Feb. 8, 2013.) On February 8, 2013, LG filed its ***first*** motion to stay discovery and to defer (1) filing a Joint Rule 26 Conference Report and Proposed Scheduling Order and (2) a Rule 16 Conference pending the Florida court's decisions on LG's motions. (*See* Florida Litigation, Dkt. 34.)

Wi-LAN filed a first amended complaint on February 11, 2013, requesting that the court issue temporary, preliminary, and permanent injunctions against LG. (*See* Florida Litigation, Dkt. 35 ¶¶ 15, 24, Demand at B (pg. 8).) Wi-LAN also moved for leave to file a supplemental second amended complaint to add a willful infringement claim and additional facts. (*See* Florida Litigation, Dkt. 36.) Wi-LAN moved the Florida court to compel arbitration in New York (*see* Florida Litigation, Dkt. 37,) and filed its responses to LG's motions the same day. (*See* Florida Litigation, Dkts. 38, 40, 41.) The Florida court denied all of LG's motions as moot in view of Wi-LAN's first amended complaint. (*See* Florida Litigation, Dkts. 43-44.) On February 19, 2013, Wi-LAN served its Rule 26 Disclosures on LG. (**Ex. 4**, Wi-LAN's Rule 26 Initial Disclosures, Feb. 19, 2013.)

LG filed renewed motions for summary judgment of noninfringement based on license, to dismiss Wi-LAN's inducement of infringement claims, and to transfer venue to the District of New Jersey on February 22, 2013. (*See* Florida Litigation, Dkts. 49, 51, 53.) LG also moved the

court, for a second time, to defer filing a Joint Rule 26 Conference Report and Proposed Scheduling Order, to defer setting a Rule 16 Conference and for a temporary stay of discovery pending the court's resolution of LG's renewed motions and Wi-LAN's motion to compel arbitration. (*See* Florida Litigation, Dkt. 52.) Wi-LAN filed its own Rule 26(f) Conference Report - Proposed Scheduling Order On February 22, 2013. (*See* Florida Litigation, Dkt. 54.)

LG requested that Wi-LAN agree to a 30 day extension to respond to Wi-LAN's Written Discovery on March 4, 2013.[4] (**Ex. 5**, Email Chain between J. Lukas and C. Pannell, at 1, Mar. 4-5, 2013.) Wi-LAN refused. (*Id*. (emphasis added).) Accordingly, on March 7, 2013, LG filed a motion for a protective order extending LG's time to object and respond to Wi-LAN's Written Discovery until after the Florida court resolved LG's dispositive motions and motion to transfer venue and Wi-LAN's motion to compel arbitration. (*See* Florida Litigation, Dkt. 67.) Wi-LAN opposed LG's motions for a stay and for a protective order. (*See* Florida Litigation, Dkts. 68, 78.)

On August 2, 2013—***now seven months after LG originally filed its motion to transfer venue***—Wi-LAN withdrew its opposition to LG's motion to transfer venue (*see* Florida Litigation, Dkt. 107,) and the case was transferred (*see* Florida Litigation, Dkt. 108) to the District of New Jersey as Case No. 2:13-cv-04895 ("NJ Litigation"). Other than LG's Renewed Motion to Transfer, the Florida court denied all of the pending motions as moot.[5] The New Jersey court denied LG's request to re-file its summary judgment motion, granted the parties' joint request to stay the case (*see* NJ Litigation, Dkt. No. 128), and administratively terminated

---

[4] LG's objections and responses to Wi-LAN's Written Discovery were due on March 7, 2013. (*See* Exs. 1 and 2.)
[5] The following motions were pending in the Florida court and denied as moot: (1) LG's motion for summary judgment of noninfringement based on license; (2) LG's motion to dismiss Wi-LAN's inducement of infringement claims; (3) LG's motion to stay of discovery pending the Florida court's decision on the pending motions; (4) LG's motion for a protective order regarding Wi-LAN's Written Discovery; (5) Wi-LAN's motion to compel arbitration; and (6) Wi-LAN's motion for leave to file a supplemental second amended complaint (*See* Florida Litigation, Dkts. 36, 37, 51, 52, 53, 67.)

the case on November 8, 2013, in favor of this Court's decision.[6]

### B. LG Files a Case Dispositive Motion for Summary Judgment of Non-Infringement Based on License

In each of the three complaints Wi-LAN filed in the underlying case, Wi-LAN alleged that only a single product line infringed the Patents-in-Suit. That lone accused product line is "the 6200 series of flat panel televisions depicted in the attached Exhibit C." (*See* Florida Litigation, Dkt. 1 ¶¶ 10, 15; Dkt. 35 ¶¶ 10, 18; Dkt. 36-1 ¶¶ 10, 21.) Exhibit C to Wi-LAN's complaints is a publicly available website printout that further identifies the accused LG's 6200 series of flat panel televisions (the "Accused Products") model numbers. (*See* Florida Litigation, Dkts. 1-6; 35-3.) Wi-LAN *did not identify any other* specific models, model series, product lines or product categories as allegedly infringing products, despite three opportunities to do so.

The only Accused Products identified in all three of Wi-LAN's complaints are compliant with one or more of the 802.11 Wi-Fi standards. In a prior litigation with LG from 2008 to 2010 (the "Prior Litigation"), Wi-LAN asserted that LG's products compliant with the same Wi-Fi standards infringed its patents. That litigation resulted in the 2010 patent license agreement (the "Agreement"), in which Wi-LAN granted to LG a license to virtually all of Wi-LAN's then-owned and future-acquired patents (including the Patents-in-Suit) covering LG's wireless (Wi-Fi-compliant) products. The Accused Products are, therefore, wireless products under the Agreement. Ignoring the Agreement, Wi-LAN sued LG, asserting infringement of *licensed patents,* based on LG's manufacture, use, sale and/or importation of *licensed products*. LG moved for summary judgment of non-infringement based on license. (*See* Florida Litigation, Dkt. 51.).

---

[6] The New Jersey court held, however, that either party could request that the case be reopened. (*See* NJ Litigation, Dkt. No. 129.)

### C. Wi-LAN Subsequently Demands and Commences Arbitration in This District

Only *after* LG filed its summary judgment motion and after Wi-LAN served Written Discovery and two amended complaints, Wi-LAN filed a demand for the NY Arbitration on February 8, 2013. (Ex. 3, 2/8/13 Demand for Arbitration.) Wi-LAN's arbitration demand stated that the dispute "arises out of the interpretation of the Patent License Agreement entered into between Wi-LAN International Inc., Wi-LAN Inc., and LG Electronics Inc. and its Subsidiaries on December 21, 2010 (the 'PLA')." (Ex. 3 at 4.) Wi-LAN requested the following relief in its demand: "that the arbitrator determine the proper interpretation of the PLA." (*Id.* at 5; *see also* Florida Litigation, Dkt. 38, Wi-LAN's Opp. to Defs.' Mot. for Summ. J. of Non-Infringement Based on License, at 2 ("the scope of coverage of a license in relation to the claims of infringement in [] this case"); Dkt. 37, Wi-LAN's Mot. to Compel Arbitration, at 1 ("claiming that the accused LG products at issue in this case are licensed under the PLA"); at 6 ("LG seeks summary judgment of Wi-LAN's patent infringement suit allegedly because the accused products are licensed under the PLA").)

Wi-LAN filed its motion to compel arbitration in the Florida court on February 11, 2013, arguing that the following provision of the Agreement requires arbitration:

> Arbitration: Any dispute, controversy, or difference which may arise between any Parties out of or in relation to or in connection with the interpretation of this Agreement or any breach of this Agreement shall be settled amicably between the Parties, but in the event no amicable settlement can be reached, shall be finally settled by arbitration in the City of New York, U.S.A. which arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. . . . Notwithstanding anything contained in this Agreement to the contrary, any Party may seek injunctive or other equitable relief whenever the facts or circumstances would permit such Party to seek such equitable relief in a court of competent jurisdiction whether in lieu of, in addition to, or prior to initiation of any arbitration as set forth above.

(**Ex. 6**, Agreement ¶ 8.3).)

Wi-LAN asked the **Florida court** to compel arbitration in **New York**.  Notwithstanding that the only Accused Products identified in Wi-LAN's complaints are **wireless** products, and, therefore, are covered by the Agreement, Wi-LAN contended that the Florida court should deny LG's motion for summary judgment of non-infringement based on license—**and neither dismiss nor stay the action, should the Florida court agree to compel arbitration**.  Thus, Wi-LAN requested that the Florida court permit the "dual-tracking" of Wi-LAN's infringement claims. Specifically, Wi-LAN argued that the Florida court should compel arbitration of infringement issues relating to the only Accused Products identified in Wi-LAN's first amended complaint (which are wireless) and allow the Florida Litigation to continue with respect to certain unknown (unasserted) products that Wi-LAN has not identified in any one of its three complaints that may not be covered by the Agreement.  (*See* Florida Litigation*,* Dkt. 38, Wi-LAN's Opp. to Defs.' Mot. for Summ. J. of Non-Infringement Based on License, at 7; *see also* Florida Litigation, Dkt. 54, Wi-LAN's Scheduling and Discovery Report and [Proposed] Scheduling Order, at 4 ("Wi-LAN does not believe arbitration will require a stay of these proceedings.  The arbitration relates only to LG's license defense with regard to televisions having WiFi.  It does not restrict the court from moving forward on the non-Wi-Fi televisions. . . .  Moreover, the Patent License Agreement LG is relying on indicates that Wi-LAN may seek judicial relief in some instances even if it is in addition to an arbitration.").)

LG asserted that the Florida court did not have jurisdiction to compel the NY Arbitration based on the clear language of 9 U.S.C. § 4 in response to Wi-LAN's motion to compel arbitration.  (*See* Florida Litigation, Dkt. 56 at 6-7.)  LG also argued that it had a contractual right to bring its case-dispositive summary judgment motion in the Florida court, (*see id*. at 8-9,) and that Wi-LAN waived its right to seek arbitration (*see id*. at 9-13).  Alternatively, LG requested that if the NY Arbitration commenced or the Florida court ordered arbitration, that the

Florida court dismiss or stay the Florida Litigation. (*See id.* at 13-15.) Wi-LAN continued to argue that the Florida court should not dismiss or stay the Florida Litigation even if it orders arbitration. (*See* Florida Litigation, Dkt. 69 at 9-10.)

JAMS commenced the arbitration filed by Wi-LAN on March 4, 2013. (**Ex. 7,** JAMS Commencement Letter, Mar. 4, 2013.) LG objected to the arbitration and requested that JAMS suspend or stay the arbitration pending a court decision on (i) whether Wi-LAN waived its right to arbitrate, (ii) whether LG had a contractual right to move for summary judgment in the Florida Litigation, and (iii) arbitrability, that is, which issues, if any, require arbitration. (*See* **Ex. 8**, Letter from R. Harris to M. Veglia, Mar. 11, 2013; **Ex. 9**, Letter from R. Harris to M. Veglia, Mar. 15, 2013.) Wi-LAN responded that the arbitration should proceed before JAMS. (*See* **Ex. 10**, Letter from B. O'Donnell to M. Veglia, Mar. 14, 2013.) JAMS denied LG's request for a stay of the arbitration on March 25, 2013, and gave the parties until April 4, 2013, to return their respective arbitrator strike list. (*See* **Ex. 11**, Letter from M. York to Counsel, Mar. 25, 2013.) After Wi-LAN withdrew its opposition to LG's motion to transfer and the action was transferred to the District of New Jersey, Wi-LAN no longer objected to a stay of discovery. (NJ Litigation, Dkt. No. 128.) In addition, Wi-LAN agreed for the first time that this Court was the only court with jurisdiction to enjoin or compel the NY Arbitration. (*Id.*)

### D.     Wi-LAN and LG Settle the Prior Litigation and Enter into the Agreement

Wi-LAN and LG ultimately settled the Prior Litigation in 2010. LG took a license to virtually all of Wi-LAN's then-owned and future-acquired patents. (*See* Ex. 6, Patent License Agreement, Dec. 21, 2010.) Andrew Parolin, the only employee that Wi-LAN identified in its Rule 26(a) Disclosures in the Florida Litigation, negotiated the Agreement on behalf of Wi-LAN. (*See* Ex. 4, Wi-LAN's Rule 26 Initial Disclosures, at 2-3 (representing that Mr. Parolin is the only Wi-LAN employee with discoverable information regarding the topics of "Wi-LAN

background, ownership, **licensing**, and value of the patents-in-suit") (emphasis added); **Ex. 12**, Letter from A. Parolin to J. Lee, Apr. 19, 2012 ("I, along with a colleague, negotiated WiLAN's existing wireless licensing agreement with LG.").) Then, after Wi-LAN initiated the Florida Litigation, the very same Mr. Parolin forwarded Wi-LAN's original complaint to LG. (*See* **Ex. 13**, Email from A. Parolin to J. Kim, Oct. 3, 2012.) Accordingly, Mr. Parolin had actual knowledge and full awareness of the Agreement and its provisions, including the arbitration provision, when Wi-LAN filed the Florida Litigation. In addition to the arbitration provision (*see* Section II (C), *supra*), the definitions of "Licensed Patents" (which includes the patents at issue in this case) and "Subject Products" (which includes all LG "wireless products") largely define the relevant portions of the Agreement. (Ex. 6, Agreement ¶¶ 1.1(d), (k).)

## III.  LEGAL STANDARDS

### A.  Waiver of the Right to Arbitrate

A court, not an arbitrator, decides the issue of waiver of the right to arbitrate based on a party's initiation of litigation and/or active participation in that litigation. *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82-83 (2d Cir. 1998); *Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd.*, 610 F. Supp. 2d 226, 231 (E.D.N.Y. 2009); *Satcom*, 49 F. Supp. 2d at 339 (holding that waiver operates as "an equitable defense" and is appropriately decided by the court) (quoting *Doctor's Assocs., Inc. v. Distajo (Distajo I)*, 66 F.3d 438, 455 (2d Cir. 1995).)[7] "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Distajo I,* 66 F.3d at 455. "In this Circuit, a party may waive its right to arbitrate in one of two ways: by expressly indicating that it wishes to resolve its claims before a court . . . or by impliedly waiving its right to enforce a contractual arbitration clause 'by engag[ing] in protracted litigation that results in prejudice to the opposing party." *Apple & Eve,*

---

[7] *See also Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353-54 (11th Cir. 2011) (holding that issues of waiver of arbitration rights based on litigation activity are exclusively for a federal court to decide).

610 F. Supp. 2d at 229 (internal citations omitted). A party who pursues court action instead of arbitration is "presumed to have waived its right to arbitrate." *Banc of Am. Secs. LLC v. Independence Tube Corp.*, Case No. 09C 7381, 2010 WL 1780321, at *7 (N.D. Ill. May 4, 2010); *In re Suprema Specialities, Inc.*, Case No. 07-4100, 2008 WL 2629476, at *1 (2d Cir. July 1, 2008) (holding that "the parties chose to waive arbitration by proceeding with a court action"); *Distajo I*, 66 F.3d at 456-57 (directing waiver inquiry based on party's instigation of state litigation); *La. Stadium*, 626 F.3d 156 at 160-61 (affirming a ruling that plaintiff waived its right to arbitrate and holding that it was significant that it was plaintiff who initiated the litigation and moved to compel arbitration by "filing its lawsuit and litigating it at length [plaintiff] 'acted inconsistently with its contractual right to arbitration'").

"[L]itigation pertaining to substantial issues going to the merits" may also constitute a waiver of arbitration. *S&R Co.*, 159 F.3d at 84 (holding that factors to consider include (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense); *see also In re ABN Int'l Capital Mts. Corp.*, 812 F. Supp. 418, 423 (S.D.N.Y. 1993) ("[W]hile federal courts encourage the enforcement of arbitration clauses, they also discourage parties from taking measures which are inconsistent with and prejudicial to both parties' right to arbitrate. Such inconsistent and prejudicial measures . . . defeat the very purposes of contractual arbitration clauses, which seek to save time and money and provide certainty to both parties with respect to choice of law and forum.").[8]

---

[8] *See also In re Merrill Lynch Auction Rate Sec. Litig.*, Case No. 09MD 2030, 2010 U.S. Dist. Lexis 12764, at *12 (S.D.N.Y. Feb. 8, 2010) (holding that plaintiff's filing of a complaint and amending it twice illustrated an unmistakable intent to litigate rather than arbitrate its claims); *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 109 (2d Cir. 1997) (holding that plaintiff's decision to continue to pursue court action after moving to compel arbitration and its failure to move for a stay showed that plaintiff acted inconsistently with its arbitration right).

"Prejudice as defined by our cases refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Doctor's Assocs., Inc. v. Distajo (Distajo II)*, 107 F.3d 126, 134 (2d Cir. 1997). Sufficient prejudice exists where a party against whom waiver is asserted: "(1) engages in discovery procedures not available in arbitration, (2) makes motions going to the merits of an adversary's claims, or (3) delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *Satcom*, 49 F. Supp. 2d at 340.[9] The court in *Satcom* carefully summarized the waiver analysis:

> The touchstone of waiver is the taking of action inconsistent with the right to arbitrate. Customarily, waiver is urged against the defendant and the inquiry for the court is whether the defendant litigated enough and the other side has suffered sufficient prejudice such that the defendant's waiver of the right to arbitrate may be inferred. ***Rarely does a plaintiff begin a litigation on the merits and then alter course and attempt to compel an arbitration.***

*Id.* at 341 (emphasis added).

### B.     A Court, and Not an Arbitrator, Decides Issues of Arbitrability.

"Questions of arbitrability," which the Supreme Court call "gateway" issues, are ones that the "contracting parties would likely have expected a court to have decided" and "are not likely to have thought …that an arbitrator would" determine. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). A court should determine whether certain claims or issues have been excluded from the arbitration requirement of an agreement. *Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998) ("Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, ***it is the duty of federal courts to enforce such limitations***.") (emphasis added); *Satcom*, 49 F. Supp. 2d at 338-39 (quoting *State of New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 62 (2d Cir. 1996)

---

[9] When a party expressly waives arbitration, it is unnecessary to establish prejudice. *See Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir. 1987); *Tech. in P'ship v. Rudin*, No. 12-cv-3699, 2013 WL 518374, *2 (2d Cir. Sept. 17, 2013) (affirming finding of waiver of arbitration right).

("'[I]t is the duty of the courts to enforce not only the full breadth of the arbitration clause, but its limitations as well.'".) Only if the parties "clearly and unmistakably provide otherwise" should a court refer these issues to an arbitrator. *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648-49 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator").[10]

## IV. ARGUMENT

### A. The Court Should Deny Wi-LAN's Motion to Compel Arbitration Because Wi-LAN Waived Its Right to Arbitrate.

The Court should deny Wi-LAN's motion to compel and should enjoin Wi-LAN from proceeding with the NY Arbitration because Wi-LAN waived its right to arbitrate. Wi-LAN initiated and actively litigated the same claims in the Florida Litigation that it seeks to arbitrate in the NY Arbitration (*i.e.,* whether the 6200 Series of LG televisions infringes the Patents-in-Suit) and Wi-LAN's deliberately inconsistent litigation tactics have wasted judicial resources and have driven up LG's legal costs.

Wi-LAN initiated and participated in the Florida Litigation in a manner wholly inconsistent with any purported right to arbitrate. Wi-LAN's decision to litigate the same claims renders the arbitration provision null and void. *See Apple & Eve*, 610 F. Supp. 2d at 229. Wi-LAN executed the Agreement that it now contends requires arbitration on December 21, 2010,

---

[10] The arbitration clause of the Agreement reads in relevant part: "[a]ny dispute, controversy, or difference which may arise between any Parties out of or in relation to or in connection with the interpretation of this Agreement or any breach of this Agreement . . . shall be finally settled by arbitration . . . which arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures." (Ex. 6, Agreement ¶ 8.3).) The Agreement does not objectively reveal a clear and unmistakable intent to submit the issue of arbitrability to arbitration.[10] JAMS Rule 11(c) recites the following broad categories of disputes that JAMS can preside over: "disputes over the formation, existence, validity, interpretation or scope of the agreement." However, because the parties agreed that they would use the JAMS rules to resolve disputes over only the "interpretation" (or breach) of the Agreement, (*see* Ex. 6, Agreement ¶ 8.3,) the Agreement does *not* give JAMS the power to rule on the other issues included in JAMS Rule 11(c), such as "the formation, existence, validity [] or scope" of the Agreement. *See United Parcel Serv. v. Lexington Ins. Group*, No. 12-cv-7961 (SAS), 2013 WL 1897777, at *2-*3 (S.D.N.Y. May 7, 2013) (denying motion to compel arbitration and holding that incorporation of AAA's rules was narrow as it only applied to "interpretation [of the Policy]," not "any and all controversies" such as the issue of arbitrability). As a result, arbitrability, which would fall under validity or scope of the Agreement, must be left for this Court to decide.

almost two years before Wi-LAN filed the Florida Litigation. Wi-LAN had access to and constructive knowledge of the Agreement and its arbitration provision as of the Agreement's execution date. Moreover, Wi-LAN ***actually knew*** that it accused LG ***wireless*** devices in the Prior Litigation that resulted in the Agreement (*see* Civil Action No. 2:08-cv-00247-TJW, E.D. Tex., Dkt. No. 5 ¶¶ 20-21 ("by making, using, offering for sale, importing, and/or selling mobile handsets ***and/or other products compliant with the CDMA2000 standard and/or the 802.11 standards***") (emphasis added)). Wi-LAN also knew that the Accused Products in the Florida Litigation are wireless (*see* Florida Litigation, Dkts. 1-6; 35-3 (Ex. C) (stating that each accused product has "Wi-Fi" "Built in").)

In fact, Andrew Parolin, the only Wi-LAN employee that Wi-LAN identified in its Rule 26(a) Disclosures in the Florida Litigation, negotiated the Agreement on behalf of Wi-LAN.[11] After Wi-LAN filed its patent infringement suit in the Southern District of Florida, it was Mr. Parolin who forwarded the original complaint to LG. (*See* Ex. 14, Email from A. Parolin to J. Kim, Oct. 3, 2012.) Mr. Parolin had actual knowledge of and access to the Agreement and its provisions, including the arbitration provision, the patents, and accused devices involved in the prior litigations that resulted in the Agreement. Mr. Parolin also played an instrumental role in Wi-LAN's decision to file and serve the underlying action against LG.[12]

Approximately ***two years*** after Wi-LAN entered the Agreement and more than ***four months*** after Wi-LAN sued LG, Wi-LAN filed its demand for arbitration in New York, on February 8, 2013. Not once during those respective periods did Wi-LAN ***ever*** mention its desire to arbitrate the claims it eventually asserted in this action. To the contrary, Wi-LAN

---

[11] (*See* Ex. 12, Wi-LAN's Rule 26 Initial Disclosures, at 2-3 (representing that Mr. Parolin is the ***only*** Wi-LAN employee with discoverable information regarding the topics of "Wi-LAN's background, ownership, licensing, and value of the patents-in-suit"); Ex. 13, Letter from A. Parolin to J. Lee, Apr. 19, 2012 ("I, along with a colleague, negotiated WiLAN's existing wireless licensing agreement with LG").)

[12] Wi-LAN's principal line of business is patent licensing. (*See* Florida Litigation, Dkt. 35 ¶ 1.)

aggressively litigated the Florida Litigation, and its actions evidence an intent to pursue its claims in federal court. Indeed, Wi-LAN filed three separate district court complaints against LG during that time. (*See* Florida Litigation, Dkts. 1, 35, 36.)

Wi-LAN actions have always been inconsistent with the alleged arbitration right it now tries to belatedly assert:

> (1) During the approximately two years after the Agreement was executed, Wi-LAN never mentioned its desire to invoke its alleged arbitration right;

> (2) Approximately two years after executing the Agreement, Wi-LAN filed suit on October 3, 2012, seeking a jury trial, preliminary and final injunctive relief and damages. (*See* Florida Litigation, Dkt. 1.) Wi-LAN waited more than four months before moving to compel arbitration (*see* Florida Litigation, Dkt. 37);

> (3) Wi-LAN never mentioned any alleged arbitration right in any of its complaints or proposed complaints (*see* Florida Litigation, Dkts. 1; 35 and 36-1);

> (4) Wi-LAN participated in a Rule 26 Conference on February 5, 2013, and did not mention any alleged arbitration right during that meeting;

> (5) Wi-LAN served substantial written document requests and interrogatories ***immediately after the conclusion of the parties' Rule 26 Conference*** (*see* Ex. 1, Wi-LAN's First Set of Interrogs. (Nos. 1-12), Feb. 5, 2013; Ex. 2, Wi-LAN's First Set of Reqs. for Produc. of Docs. and Things (Nos. 1-41), Feb. 5, 2013);

> (6) Wi-LAN served Rule 26 Disclosures on February 19, 2013, (***after*** Wi-LAN moved to compel arbitration) (*see* Ex. 4, Wi-LAN's Rule 26 Initial Disclosures, Feb. 19, 2013);

> (7) Wi-LAN's Rule 26 Disclosures (served ***after*** Wi-LAN moved to compel arbitration) fail to mention any alleged arbitration right (*see id.*);

> (8) Wi-LAN refused to agree to a stay of discovery on February 8, 2013, (***the day Wi-LAN filed its demand for arbitration*** in New York City) (*see* Ex. 5, Email from J. Lukas to C. Pannell, Feb. 5, 2013; Ex. 3, Demand for Arbitration, Feb. 8, 2013);

> (9) Wi-LAN filed a ***first amended complaint*** and a motion for leave to file a supplemental ***second amended complaint*** on February 11, 2013, (***after*** Wi-LAN filed its demand for arbitration in New York City and the same day it filed its motion to compel arbitration) (*see* Florida Litigation, Dkts. 35, 36)[13];

> (10) Wi-LAN again refused to agree to a stay of discovery on February 21, 2013, (***after*** filing its motion to compel arbitration on February 11, 2013) (*see* Ex. 6, Email Chain between J. Lukas and C. Pannell, at 1, Feb. 20-21, 2013)[14];

---

[13] *See In re Merrill Lynch*, 2010 U.S. Dist. Lexis 12764, at *12 (holding that plaintiff's filing of a complaint and amending it twice illustrated an unmistakable intent to litigate rather than arbitrate its claims).
[14] *See PPG Indus.*, 128 F.3d at 109 (holding that plaintiff's decision to continue court action after moving to compel arbitration and failure to move for a stay showed that plaintiff acted inconsistently with its arbitration right).

(11) Wi-LAN filed its own Scheduling and Discovery Report and [Proposed] Scheduling Order on February 22, 2013, (*after* filing its motion to compel arbitration on February 11, 2013) (*see* Florida Litigation, Dkt. 54, Wi-LAN's Scheduling and Discovery Report and [Proposed] Scheduling Order);

(12) Wi-LAN represented in its Scheduling and Discovery Report that "Wi-LAN objected to the request for stay," "Wi-LAN opposes any stay of these proceedings," and "Wi-LAN does not believe any such stay is warranted" (*see id.* at 1, 3);

(13) Wi-LAN requested a fact discovery cut-off of September 30, 2013; an expert discovery cut-off of November 29, 2013; and a trial date of February 24, 2014 in its Scheduling and Discovery Report and [Proposed] Scheduling Order (*see id.* at 6);

(14) Wi-LAN objected to referring dispositive motions to a Magistrate Judge in its Scheduling and Discovery Report and [Proposed] Scheduling Order (*see id.* at 5);

(15) Wi-LAN stated that "***the litigation will have to proceed,***" and that "Wi-LAN does not believe arbitration will require a stay of these proceedings. The arbitration relates only to LG's license defense with regard to televisions having WiFi. ***It does not restrict the court from moving forward*** on the non-Wi-Fi televisions" in its Scheduling and Discovery Report and [Proposed] Scheduling Order (*see id.* at 2, 4) (emphasis added);

(16) Wi-LAN refused to grant LG a 30-day extension to respond to Wi-LAN's Written Discovery (*see* Ex. 5, Email Chain between J. Lukas and C. Pannell, at 1, Mar. 4-5, 2013 ("Wi-LAN will ***not*** agree to a 30-day extension.") (emphasis added));

(17) Wi-LAN ***opposed*** LG's motion for a stay pending the Florida court's decision on LG's dispositive motions and motion to transfer and Wi-LAN's motion to compel arbitration (*see* Florida Litigation, Dkt. 68); and

(18) Wi-LAN ***opposed*** LG's motion for a protective order extending LG's time to object and respond to Wi-LAN's Written Discovery until after the Florida court decided LG's dispositive motions and motion to transfer and Wi-LAN's motion to compel arbitration (*see* Florida Litigation, Dkt. 78).

Wi-LAN has substantially precipitated, and participated in, the underlying litigation (and discovery) process and has therefore acted inconsistently with any purported arbitration right. *See Cotton v. Slone*, 4 F.3d 176, 179-180 (2d Cir. 1993) ("Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration."). Moreover, the parties have litigated "substantial issues going to the merits" by briefing a case-dispositive summary judgment motion, a motion to dismiss Wi-LAN's inducement of infringement claims, and a motion to transfer venue. *See S&R Co.*, 159 F.3d at 84.

LG has suffered, and will continue to suffer, prejudice based on Wi-LAN's change in litigation strategy.[15] Wi-LAN waited more than two years after it knowingly entered the Agreement and four months after filing its lawsuit before moving to compel arbitration. Since then, Wi-LAN has actively and purposefully abused the litigation process to LG's detriment and expense. LG has suffered substantial prejudice because it has exhausted significant resources and incurred substantial expense to:

(1) Prepare and file three substantive, fact-intensive motions, including a motion for summary judgment of non-infringement, a motion to dismiss induced infringement claims, and a motion to transfer venue in response to Wi-LAN's original complaint (*see* Florida Litigation, Dkts. 22, 25, 30);

(2) Prepare and file a motion to stay discovery (*see* Florida Litigation, Dkt. 34);

(3) Prepare and file three substantive, fact-intensive *renewed* motions, including a motion for summary judgment of non-infringement, a motion to dismiss induced  infringement claims, and a motion to transfer venue in response to Wi-LAN's first amended complaint (*see* Florida Litigation, Dkts. 49, 51, 53);

(4) Prepare and file a *second* motion to stay discovery (*see* Florida Litigation, Dkt. 52);

(5) Prepare and file its opposition to Wi-LAN's motion for leave to file a second amended and supplemental complaint (*see* Florida Litigation, Dkt. 59);

(6) File a motion for a protective order (*see* Florida Litigation, Dkt. 67);

(7) Prepare and file its opposition to Wi-LAN's motion to compel arbitration (*see* Florida Litigation, Dkt. 56);

(8) Prepare and file its replies in support of its three substantive, fact-intensive and/or dispositive *renewed* motions for summary judgment of non-infringement, to dismiss induced infringement claims and to transfer venue (*see* Florida Litigation, Dkts. 73, 74, 77);

(9) Prepare and file its replies in support of its motion for a stay and motion for a protective order (*see* Florida Litigation, Dkts. 76, 79); and

(10) Analyze and evaluate Wi-LAN's patent infringement claims.

In fact, LG has suffered three types of recognized prejudice, *i.e.*, (1) Wi-LAN has engaged in discovery procedures not available in arbitration; (2) the parties have filed and briefed multiple motions going to the merits of Wi-LAN's claims; and (3) Wi-LAN has delayed

---

[15] The Court should also conclude that LG need not establish prejudice because Wi-LAN expressly waived arbitration by filing the Florida Litigation. *See Gilmore*, 811 F.2d at 112.

invoking its purported right to arbitrate, resulting in great expense to LG.  *See Satcom*, 49 F. Supp. 2d at 340 (citing *Cotton*, 4 F.3d at 179).)

Wi-LAN's pursuit of the NY Arbitration has irreparably harmed LG and will continue to irreparably harm LG as a matter of law if the Court does not stop Wi-LAN.  "The Second Circuit has held that a party necessarily suffers irreparable harm if 'forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (citing *Merrill Lynch*, 337 F.3d at 129); *see also Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) (affirming an order enjoining arbitration because "the time and resources [the defendant] would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages"); *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("If a court has concluded that a dispute is *non*-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award.").  In addition to the *per se* harm that Wi-LAN has exposed, and continues to expose, LG to by arbitrating a non-arbitrable dispute, LG would also "lose its right to have [D]efendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented" if the arbitration proceeds.  *UBS Sec.*, 684 F. Supp. 2d at 354.  In particular, Wi-LAN would be able to preempt the eventual consideration of LG's case-dispositive motion for summary judgment of non-infringement—a clear example of the substantive and procedural prejudice LG would endure if those claims were sent to arbitration.

Moreover, Wi-LAN's deliberate litigation scheme has forced LG to expend time and money to prepare, file, and re-file its dispositive motions, its motion to transfer, numerous stay

motions, a motion for a protective order, and responses to Wi-LAN's motions. And, only after LG expended significant financial resources and time to prepare and file those motions did Wi-LAN change course and agree to much of the relief requested by LG. For example, Wi-LAN twice opposed LG's motion to transfer venue in the underlying case only to withdraw its opposition months later after LG's motion was filed, re-filed, and fully briefed. Likewise, Wi-LAN served written discovery and opposed LG's multiple requests for a stay in the underlying case, forcing LG to file and re-file several motions for a stay and for a protective order, only to withdraw its oppositions months later and agree to a stay of discovery. Further, Wi-LAN moved to compel the NY Arbitration in the Florida court, forcing LG to respond by moving this Court to enjoin the arbitration (a motion that Wi-LAN opposed in both the Florida Litigation and here). Then, months later, after briefing was closed, Wi-LAN agreed that this Court was the appropriate court to decide whether to compel or enjoin the arbitration.

The Court should not countenance Wi-LAN's vexatious conduct. Although the underlying case is stayed (administratively closed), Wi-LAN will continue to manipulate the judicial system. Wi-LAN will attempt to reopen the underlying litigation, attempt to accuse additional products, and, if successful, potentially seek to have those new products moved to arbitration while the re-opened litigation proceeds in parallel. (Wi-LAN Mot. to Compel, Dkt. No. 39 at 13 ("whereas the merits of Wi-LAN's patent infringement claims . . . are solely within the province of the stayed New Jersey Action"); *id.* at 18 n. 7 ("Discovery was, and remains, warranted."); *see also Satcom*, 49 F. Supp. 2d at 338-39 ("There is no provision in the Licensing Agreements to permit a party to make the choice between litigation and arbitration a second time for the same dispute, or to jump back and forth between the two options for dispute resolution at its whim **. . .** Having made this choice, it has no right under the agreements to abandon this litigation and start afresh with an arbitration.").)

Indeed, Wi-LAN contends that the parties should simultaneously arbitrate and litigate its infringement claims, and LG's defense to those claims, against the only accused products. Wi-LAN has clearly expressed its motive to continue the underlying litigation. Wi-LAN wants to conduct a fishing expedition to determine whether there are any additional LG products to accuse of infringement. (*See* Florida Litigation, Dkt. 54, Wi-LAN's Scheduling and Discovery Report and [Proposed] Scheduling Order, at 2, 4 ("*[T]he litigation will have to proceed . . .*" and "Wi-LAN does not believe arbitration will require a stay of these proceedings. The arbitration relates only to LG's license defense with regard to televisions having WiFi. *It does not restrict the court from moving forward* on the non-Wi-Fi televisions."; *see also* Dkt. No. 17 at 15 ("Hence, litigation must continue on those claims. Discovery is warranted as there clearly are *nonarbitrable* issues regarding the infringement of televisions without Wi-Fi.").)

Wi-LAN simply cannot have it both ways—it cannot simultaneously arbitrate and litigate its patent infringement claims. Wi-LAN's attempts to flip-flop between arbitration and federal court litigation will continue to inflict harm on LG. Tellingly, Wi-LAN failed to inform the Florida court why its claims or causes of action are both arbitrable *and* not arbitrable—*nor can it*. In addition, Wi-LAN has never explained why its current definition of "wireless" is different from the plain and ordinary meaning denoted in the Agreement such that arbitration is required—*nor can it*. If the Court does not deny Wi-LAN's motion, then Wi-LAN will be allowed to continue its abusive conduct, and LG will be forced to participate in an arbitration that is duplicative of the underlying litigation. The cost to defend both would be excessive. In sum, the Court should deny Wi-LAN's motion to compel because Wi-LAN *waived* any right to arbitrate.

**B.      Wi-LAN's Arbitration Demand Is Beyond the Scope of the Mandatory Arbitration Provision Because Wi-LAN and LG Chose to Pursue Injunctive/Equitable Relief in a Judicial Forum by Filing the Florida**

The Court should also deny Wi-LAN's motion to compel and enjoin Wi-LAN from proceeding with the NY Arbitration because the arbitration provision does not apply here. Wi-LAN chose to invoke the "injunctive/equitable relief in a judicial forum" provision of the Agreement by filing the Florida Litigation. LG invoked that same provision when, in response to Wi-LAN's complaint filed in the Florida Litigation, it moved to summarily dispose of Wi-LAN's claims by asserting a license defense.[16] *Oldroyd*, 134 F.3d at 76 ("Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations."). Under the terms of the Agreement, neither Wi-LAN nor LG is obligated to arbitrate the claims that Wi-LAN now seeks to arbitrate. In particular, Paragraph 8.3 of the Agreement qualifies the applicability of the arbitration provision:

> Notwithstanding anything contained in this Agreement to the contrary, any Party may seek injunctive relief whenever the facts or circumstances would permit such Party to seek such equitable relief in a court of competent jurisdiction whether in lieu of, in addition to, or prior to initiation of any arbitration as set forth below.

(Ex. 6, Agreement at ¶ 8.3.)

Wi-LAN exercised its contractual right to seek equitable or injunctive relief in a U.S. District Court by filing the Florida Litigation, and LG likewise excercised its right by filing its summary judgment motion based on its license defense after it had been sued by Wi-LAN. (*Id.*) Indeed, Wi-LAN's complaint sought a jury trial on the merits, preliminary and final injunctive

---

[16] The Agreement expressly provides that LG may pursue any equitable and injunctive claims or defenses such as LG's motion for summary judgment of non-infringement *in lieu* of arbitration. (*See* Ex. 6 ¶ 8.3.) Wi-LAN brought its patent infringement claims in the Florida Litigation and asked the Florida court to award temporary and permanent injunctive relief. (*See* Dkt. 35 ¶¶ 15, 24, Demand at B (pg. 8).) Wi-LAN further agreed that the Florida court was a "court of competent jurisdiction." Finally, it is axiomatic that LG's motion for summary judgment of non-infringement based on license is equitable in nature because it requests, at the very least, that the Court deny Plaintiff's requested injunctive relief because LG and the only identified Accused Products are licensed pursuant to the Agreement. *See generally, Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 855 (Fed. Cir. 1987) (noting that an order dismissing a patent infringement claim on the defendant's motion for summary judgment was "injunctive in nature").

relief and damages for LG's alleged infringement.  (*See* Florida Litigation, Dkt. 35 at Prayer for Relief.)  Wi-LAN does not dispute that the Agreement offers the parties a choice to litigate or arbitrate certain disputes.  (*See* Florida Litigation, Dkt. 69 at 4 n.2 ("The [equitable/injunctive] language . . . has to do with the parties' concurrent right to seek injunctive or equitable relief"); *see also* Florida Litigation, Dkt. 54 at 4).)  Consistent with the language of Paragraph 8.3, Wi-LAN and LG exercised their respective rights to ***litigate***, as opposed to ***arbitrate***, claims for equitable or injunctive relief.  As such, Paragraph 8.3 expressly excludes those claims and defenses from the scope of mandatory arbitration.  Having relied on Paragraph 8.3 of the Agreement, and one of the express specific exceptions to mandatory arbitration, Wi-LAN (and LG) cannot assert that those same claims are also subject to mandatory arbitration.  In other words, Wi-LAN cannot choose to litigate and arbitrate the same dispute at the same time.  Any other result would be non-sensical and contrary to public policy.

This Court encountered the same situation in *Satcom* and held that the dispute was not subject to arbitration because plaintiff initially elected to litigate and not arbitrate:

> ***There is no provision in the Licensing Agreements to permit a party to make the choice between litigation and arbitration a second time for the same dispute, or to jump back and forth between the two options for dispute resolution at its whim or when it meets with an adverse ruling***. . . .  Instead, SATCOM filed an action for a jury trial on the merits and an award of damages and permanent injunctive relief.  Having made this choice, it has no right under the agreements to abandon this litigation and start afresh with an arbitration.  ***"[I]t is the duty of the courts to enforce not only the full breadth of the arbitration clause, but its limitations as well.***"

*Satcom*, 49 F. Supp. 2d at 338-39 (internal citations omitted) (emphasis added).  For this additional reason, the Court should deny Wi-LAN's motion to compel and enjoin Wi-LAN from proceeding with the NY Arbitration.

### C.    Wi-LAN's Arbitration Demand Violates the Claim Splitting Doctrine Because Wi-LAN Asserted the Same Claims (or Causes of Action) in the Underlying Litigation.

The Court should also enjoin Wi-LAN from proceeding with the NY Arbitration under the doctrine of claim splitting. "Th[e] rule against claim splitting 'is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute **overlapping or repetitive actions** in different courts or at different times.'" *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003) (citations omitted) (emphasis added). Yet, Wi-LAN is attempting to do exactly that, by simultaneously pursuing its patent infringement claims in the Florida and the New Jersey courts and in the NY Arbitration.

The doctrine of claim splitting asks "whether the first suit, **assuming** it were final, would preclude the second suit." *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) (emphasis added);[17] *Kim v. Sara Lee Bakery Group, Inc.,* 412 F. Supp. 2d 929 (N.D. Ill. 2006) ("Unlike res judicata, . . . courts have applied the doctrine of claim splitting before there is a final judgment in a prior action"); *see also Fujitsu Ltd. v. Tellabs Operations, Inc*., Case No. 12C3229, 2013 U.S. Dist. Lexis 12142, *7-*11 (N.D.Ill., Jan. 30, 2013) (dismissing-in-part the complaint in second filed action under doctrine of claim splitting because the same patents and products were at issue in the earlier filed action and the later action arose from the same transactional facts); *Single Chip Sys. Corp. v. Intermec IP Corp*., 495 F. Supp. 2d 1052, 1058-59 (S.D. Cal. 2007) (dismissing complaint in later action under doctrine of claim splitting).

Wi-LAN has asked the New Jersey court to preside over two claims in the District of New Jersey that are identical to the claims Wi-LAN seeks to arbitrate in New York (*i.e.*, whether

---

[17] At least one court within the Second Circuit has cited with approval and applied the *Katz* claim splitting test set. *See Kanciper v. Suffolk County Soc. For Prevention of Cruelty to Animals, Inc.*, Case No. 12–CV–2104 (ADS)(ARL), 2013 WL 673740, at *18 (E.D.N.Y., Feb. 23, 2013) ("Although it does not appear that the Second Circuit has expressly embraced this notion, the Court finds the Tenth Circuit's analysis in *Katz* to be persuasive.").

the 6200 Series of LG televisions infringes the Patents-in-Suit). The two claims[18] that are at issue in the underlying litigation are for patent infringement of U.S. Patent No. 6,359,654 and U.S. Patent No. 7,034,889, respectively. To shroud its improper behavior, Wi-LAN has attempted to split each of its two patent infringement claims along the boundary of wireless v. still unidentified (non-asserted) non-wireless products. On one hand, Wi-LAN has requested that the NY Arbitration decide whether wireless products are subject to the Agreement and hence do not infringe, while requesting, on the other hand, that the New Jersey Court decide whether unknown and unidentified non-wireless products infringe. But Wi-LAN's distinction is one without meaning under the claim splitting doctrine. **Both** categories of accused products are part of the ***same*** patent infringement claim (*i.e.*, cause of action) for each Patent-in-Suit. *See Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits.") Wi-LAN cannot magically transform a single claim for patent infringement into two claims by dividing it into two categories of accused products (only one of which Wi-LAN has actually accused of infringement here, namely, the 6200 Series of wireless LG televisions).

Wi-LAN filed the underlying litigation long before it sought arbitration, and it must live with its decision. The Court should not permit Wi-LAN to pursue the same two patent infringement claims in both the underlying litigation and in the NY Arbitration. Instead, the subsequently-filed NY Arbitration should be enjoined and terminated. Allowing the arbitration to continue would reward Wi-LAN for its vexatious initiation of duplicative proceedings.[19]

---

[18] The Federal Circuit defines a "claim" as a "cause of action." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 478 (Fed. Cir. 1991).

[19] Denying Wi-LAN's motion best serves the public interest. "There is a significant public interest in conserving judicial and arbitration resources by preventing duplicative proceedings." *Morgan Stanley & Co, Inc. v. Seghers*, Case No. 10 Civ. 5378 (DLC), 2010 U.S. Dist. LEXIS 107686, at *22 (S.D.N.Y. Oct. 8, 2010) (granting Morgan

## V. CONCLUSION

For the reasons set forth above, LG respectfully requests that the Court deny Wi-LAN's motion to compel and enjoin Wi-LAN from proceeding with the NY Arbitration.

Dated: December 19, 2013

Respectfully submitted,

**GREENBERG TRAURIG, LLP.**

*/s/Richard D. Harris*

Richard A. Edlin (edlinr@gtlaw.com)
James H. Donoian (donoianj@gtlaw.com)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-6528 (*telephone*)
(212) 801-5528 (*facsimile*)
edlinr@gtlaw.com
donoianj@gtlaw.com

Richard D. Harris (*pro hac vice*)
James J. Lukas, Jr. (*pro hac vice*)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400 (*telephone*)
harrisr@gtlaw.com
lukasj@gtlaw.com
maierse@gtlaw.com
levinsteinm@gtlaw.com

*Attorneys for Plaintiffs LG Electronics, Inc.*
*and LG Electronics U.S.A., Inc.*

---

Stanley's motion for a preliminary injunction). Here, too, granting LG's motion best serves the public interest by avoiding dual-track proceedings that will waste judicial and/or arbitrator resources.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on December 19, 2013.

*/s/Richard D. Harris*
Richard D. Harris