USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/21/14__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LG ELECTRONICS, INC. and LG                     :
ELECTRONICS U.S.A., INC.,                       :
                                                :
                                Plaintiffs,     :           No. 13-cv-2237-RA
                                                :
                    -v-                         :           OPINION AND ORDER
                                                :
WI-LAN USA, INC. and WI-LAN, INC.,              :
                                                :
                                Defendants.     :
                                                :
-------------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

Plaintiffs, LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG"), seek

a declaratory judgment that their patent dispute with defendants, Wi-LAN USA, Inc. and Wi-

LAN, Inc. (collectively "Wi-LAN"), is nonarbitrable and request that the Court enjoin Wi-LAN

from proceeding with arbitration. Wi-LAN moves to compel arbitration. For the reasons that

follow, Wi-LAN's motion to compel arbitration is granted and the case is dismissed.

## BACKGROUND

### I.     The Patent License Agreement

On December 21, 2010, Wi-LAN and LG entered into a patent license agreement ("the

PLA"). (Dallow Decl. Ex. A.) The PLA grants LG licenses to "make, have made, import, use,

lease, offer for sale, sell, transfer and/or otherwise dispose of" products containing technology

under patents controlled by Wi-LAN. (Id. at Ex. A ¶¶ 2.1-2.2.) The PLA contains an arbitration

clause that provides as follows:

> Any dispute, controversy, or difference which may arise between
> any Parties out of or in relation to or in connection with the
> interpretation of this Agreement or any breach of this Agreement

> shall be settled amicably between the Parties, but in the event no amicable settlement can be reached, shall be finally settled by arbitration in the City of New York, U.S.A. which arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. . . . Notwithstanding anything contained in this Agreement to the contrary, any Party may seek injunctive or other equitable relief whenever the facts or circumstances would permit such Party to seek such equitable relief in a court of competent jurisdiction whether in lieu of, in addition to, or prior to the initiation of any arbitration as set forth below.

(Dallow Decl. Ex. A ¶ 8.3 (hereinafter, the "Arbitration Clause").)

## II.    Procedural History

The dispute between the parties initially arose in 2012 with a disagreement regarding LG's manufacture, sale, and importation of certain digital flat-panel televisions. A complicated procedural history followed, involving proceedings in three different jurisdictions.

On October 3, 2012, Wi-LAN filed a complaint in the Southern District of Florida (the "Florida Complaint") asserting patent-infringement claims against LG. (Wi-LAN, Inc. v. LG Electronics, Inc., No. 12 Civ. 23611, Dkt. 1 (S.D.Fl.).) The Florida Complaint alleged that LG was infringing on two of Wi-LAN's patents for video display technology. (No. 12 Civ. 23611, Dkt. 1 ¶¶ 6-8, 10-11, 15-16 (S.D.Fl.).) Specifically, it asserted that "LG is making, using, offering to sell, selling and/or importing" infringing products, "including but not limited to the 6200 series of flat panel televisions." (Id. ¶ 10.) The Florida Complaint did not mention the PLA.

On January 25, 2013, LG filed both a motion to dismiss and a motion for summary judgment. (No. 12 Civ. 23611, Dkt. 22, 25 (S.D.Fl.).) LG asserted that the televisions at issue are "wireless products" covered by the PLA, and that it is therefore entitled to manufacture, sell, and import them. (Def.'s Mem. of Law 1; Pl.'s Opp'n 6.) LG also filed motions to transfer

2

venue to the District of New Jersey and to stay discovery. (No. 12 Civ. 23611, Dkt. 30, 34 (S.D.Fl.).)

On February 8, 2013, approximately four months after first filing the Florida Complaint, but only two weeks after LG first argued that the televisions are covered by the PLA, Wi-LAN invoked the PLA's Arbitration Clause by submitting an arbitration demand to JAMS and requesting that "the arbitrator determine the proper interpretation of the PLA." (Harris Decl. Ex. 3 at 5.) On February 11, 2013, Wi-LAN filed a motion to compel arbitration, a first amended complaint, a motion for leave to file a second amended complaint, and oppositions to three of LG's motions. (No. 12 Civ. 23611, Dkt. 35-38, 40-41 (S.D.Fl.).) In response to Wi-LAN's first amended complaint, the Florida court denied LG's four pending motions as moot, all of which LG subsequently refiled. (No. 12 Civ. 23611, Dkt. 43-44, 49, 51-53 (S.D.Fl.).) LG also moved for a protective discovery order. (No. 12 Civ. 23611, Dkt. 67 (S.D.Fl.).)

On April 4, 2013, LG filed an action in this Court seeking declaratory and injunctive relief to prevent arbitration from going forward. (No. 13 Civ. 2237, Dkt. 1-2 (S.D.N.Y.).) In response, Wi-LAN filed an emergency motion in the Florida court, urging it to enjoin LG from proceeding with its action in this Court. (No. 12 Civ. 23611, Dkt. 82 (S.D.Fl.).) On April 22, 2013, this Court issued a stay, concluding that the first-filed rule required the Florida court to determine, as an initial matter, whether it or this Court should resolve the issue of arbitration. (No. 13 Civ. 2237, Dkt. 30 (S.D.N.Y.).)

On August 2, 2013, Wi-LAN withdrew its opposition to LG's motion to transfer venue and, on August 13, 2013, the district court in Florida transferred the case to the District of New Jersey. (No. 12 Civ. 23611, Dkt. 107-08 (S.D.Fl.).) At the time of transfer, eight motions were fully briefed and pending in the Florida action: LG's renewed motion for summary judgment,

3

LG's renewed motion to dismiss, LG's renewed motion to transfer venue, LG's two discovery motions, Wi-LAN's motion to compel arbitration, Wi-LAN's motion to file a second amended complaint, and Wi-LAN's motion for an injunction.  (No. 12 Civ. 23611, Dkt. 49-97 (S.D.Fl.).)  The parties, however, had engaged in only limited discovery.[1]

On October 25, 2013, the parties advised this Court and the district court in New Jersey that they both agreed that this Court should decide the issue of arbitration, because—under Third Circuit law—a district court in New Jersey cannot compel arbitration outside of New Jersey. (Wi-LAN, Inc. v. LG Electronics, Inc., No. 13 Civ. 04895, Dkt. 128 (D.N.J.); No. 13 Civ. 2237, Dkt. 36 (S.D.N.Y.).)  Accordingly, the district court in New Jersey stayed that action pending this Court's ruling on the issue of arbitration.  (No. 13 Civ. 04895, Dkt. 129 (D.N.J.).)  Wi-LAN subsequently filed the present motion to compel arbitration.

## DISCUSSION

### I.    The Federal Arbitration Act

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "creates a body of federal substantive law . . . applicable to arbitration agreements, such as the one at issue here, affecting interstate commerce." Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted).  The FAA embodies "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  The Supreme Court, accordingly, has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," id. at 24-25, and that generally "the party resisting arbitration bears the burden of

---

[1] Wi-LAN had made initial disclosures pursuant to Federal Rule of Civil Procedure 26, but LG had not yet made initial disclosures. (Harris Decl. Ex. 4; Defs.' Mem. of Law 18-19.)  In addition, Wi-LAN had served LG with initial interrogatories and document requests, to which LG had not responded. (Harris Decl. Exs. 1-2; Defs.' Mem. of Law 18-19; Reply 1.)

4

proving that the claims at issue are unsuitable for arbitration," Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).   Nonetheless, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration."   First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

## II.      Waiver of the Right to Arbitrate

At the outset, LG argues that Wi-LAN waived its right to enforce the Arbitration Clause by initiating and actively pursuing litigation in Florida.   (Pls.' Opp'n 13.)   In response, Wi-LAN contends that LG's waiver defense must be resolved by the arbitrator instead of the Court, and, in any event, that its actions were not inconsistent with arbitration.   (Defs.' Mem. of Law 13-19.) For the reasons that follow, the Court decides the issue of whether Wi-LAN has waived its right to arbitrate and concludes that it has not.

### A.      *Who Should Decide Waiver*

The parties first dispute who should resolve the issue of whether Wi-LAN has waived its right to arbitrate by initiating litigation, the Court or the arbitrator.

Traditionally, courts, not arbitrators, have decided claims of waiver of the right to arbitrate based on participation in protracted litigation.   Indeed, the Second Circuit has explicitly held that "where the waiver defense [is] based on prior litigation by the party seeking arbitration . . . the court should decide the issue of waiver."   Doctor's Assocs., Inc. v. Distajo (Distajo I), 66 F.3d 438, 456 (2d Cir. 1995).   Other courts have discussed the "traditional rule" that courts should decide this type of waiver.   See Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 217-18 (3d Cir. 2007); see also Distajo I, 66 F.3d at 455 (reviewing cases over several decades in which the court decided waiver).   In so doing, courts have explained that "[q]uestions of litigation-

conduct are best resolved by a court that has inherent power to control its docket and prevent abuse in its proceedings (i.e. forum shopping)," Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd., 610 F. Supp. 2d 226, 230 (E.D.N.Y. 2009) (citation omitted), and because "sending waiver claims to the arbitrator would be exceptionally inefficient" in cases in which "the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration," Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 13 (1st Cir. 2005). See also Ehleiter, 482 F.3d at 217-19.

In urging that it should be left to the arbitrator to resolve LG's waiver defense, Wi-LAN relies on dicta from Howsam v. Dean Witter Reynolds, Inc., a case in which the Supreme Court stated that "the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability." 537 U.S. 79, 84 (2002) (quoting Moses H. Cone, 460 U.S. at 24-25) (alteration in original) (internal quotation marks omitted). In the wake of Howsam, courts have struggled with reconciling the language in Howsam with the courts' traditional role of deciding waiver defenses based on litigation conduct. Compare Marie, 402 F.3d at 14, Ehleiter, 482 F.3d at 221, and Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 F. App'x 462, 464 (5th Cir. 2004), with Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co., 328 F.3d 462, 466 (8th Cir. 2003). In explaining why it continues to adhere to the traditional rule post-Howsam, the Third Circuit opined that, "considered within the context of the entire opinion, . . . it becomes clear that the [Howsam] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration . . . and not to claims of waiver based on active litigation in court." Ehleiter, 482 F.3d at 219. Post-Howsam, the Second Circuit has resolved the issue of litigation-conduct waiver on numerous occasions. See, e.g., Tech. in P'ship, Inc. v. Rudin, 538 F. App'x 38, 39 (2d Cir. 2013); Baker & Taylor,

6

Inc. v. AlphaCraze.Com Corp., 602 F.3d 486, 490-92 (2d Cir. 2010); Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159-60 (2d Cir. 2010); Brookridge Funding Corp. v. Nw. Human Res., Inc., 170 F. App'x 170, 171 (2d Cir. 2006).[2] This Court, which is in the best position to assess Wi-LAN's previous conduct in this matter, will do so as well.[3]

## B.   Legal Standard for Waiver

"[A] party may waive its right to arbitration by inconsistent resort to litigation." Seguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 862 (2d Cir. 1985). Waiver occurs when a party "engages in protracted litigation that prejudices the opposing party." PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997). The Second Circuit has established a three-part test for determining whether a party has waived its right to arbitration, which considers: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." Id. "[A]ny doubts concerning whether there has been a waiver are resolved in favor of arbitration." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995). "Given [the] dominant federal policy favoring arbitration, waiver of

---

[2] Although The Second Circuit noted in Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 394 (2d Cir. 2011), that defenses to arbitrability such as waiver and estoppel "generally" fall into the "group of issues presumptively for the arbitrator" (and referred the issue there to an arbitrator), that case did not involve a claim of waiver based a party's participation in protracted litigation. Rather, the issue was a previous representation by the party's corporate predecessor that it would agree to submit itself to litigation. Id. at 396. The main case on which Wi-LAN relies, Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38, 351 F.3d 43, 44 (2d Cir. 2003), is also distinguishable, as the conduct at issue in that case occurred pre-litigation. By contrast, LG's allegations of waiver in this case are based on Wi-LAN's filing of a complaint and having participated in several months of litigation.

[3] In a one-sentence footnote in its reply brief, Wi-LAN also argues that the arbitrator should decide the issue of waiver because "by invoking JAMS arbitration rules, the parties agreed to arbitrate the issue of arbitrability." (Defs.' Reply at 3 n.2.) The Second Circuit does not appear to have squarely addressed the question of whether litigation-conduct waiver is an issue to be decided by an arbitrator when the parties have agreed to have the arbitrator decide questions of arbitrability. The Court, however, declines to address this question, because it has not been adequately raised. See United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised . . . ."); Cuoco v. Moritsugu, 222 F.3d 99, 112 n.4 (2d Cir. 2000) (holding that a "single, conclusory, one-sentence argument" was insufficient to adequately raise an issue).

the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985).

### C.    *Whether Wi-LAN Waived its Right to Arbitration*

Although it is true that Wi-LAN did not move to compel arbitration until approximately four months after it filed the Florida Complaint, it has not waived its right to arbitrate. While the parties did expend time and effort litigating during that time period, their litigation efforts focused primarily on LG's own motions, and LG has not established that it suffered any prejudice as a result.

"The key to a waiver analysis is prejudice." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002). In this setting, the Second Circuit has "recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." Louisiana Stadium, 626 F.3d at 159. The first type of prejudice occurs "when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or obtains information through discovery procedures not available in arbitration." Doctor's Assocs., Inc. v. Distajo (Distajo II), 107 F.3d 126, 131 (2d Cir. 1997) (citations and internal quotation marks omitted). The second type occurs "when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." Thyssen, 310 F.3d at 105 (quoting Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991)).

LG has not shown substantive prejudice. Neither the district court in Florida nor the one in New Jersey ruled on any of LG's substantive motions, and Wi-LAN is thus not attempting "to use arbitration as a means of aborting a suit that did not proceed as planned." Cf. Louisiana

Stadium, 626 F.3d at 161. Furthermore, Wi-LAN's discovery requests did not prejudice LG, because LG produced nothing in response. See, e.g., Leadertex, 67 F.3d at 26 (holding that discovery was not prejudicial, because the party seeking arbitration "obtained no facts in discovery that would have been unavailable in arbitration").

LG has also failed to show prejudice due to excessive delay and expense. The approximately four-month delay from the time Wi-LAN filed its complaint on October 3, 2012 until it moved to compel arbitration on February 11, 2013 is insufficient, alone, to establish waiver. See Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985) (holding that an eight-month delay was "insufficient by itself to constitute a waiver of the right to arbitrate"); PPG Indus., 128 F.3d at 108 (same as to five-month delay). LG asserts that "it has exhausted significant resources and incurred substantial expense" in analyzing Wi-LAN's claims, filing its own motions, and responding to Wi-LAN's motion to compel arbitration and motion for leave to file a second amended complaint. (Pls.' Opp'n 17.) All of the motions going to the merits of the case, however, were filed by LG, and thus do not support a finding of waiver. See Thyssen, 310 F.3d at 105 (holding there was no waiver and noting that the party seeking arbitration had not filed any substantive motions); Assitalia le Assicurazioni D'Italia S.p.A. v. Nippon Cargo Airlines Co., Ltd., No. 06 Civ. 6423 (DLI) (JMA), 2009 WL 3064787, at *7 (E.D.N.Y. Sept. 22, 2009) (stating that the party resisting arbitration "cannot complain of any cost or delay associated with" its own motion). "Incurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." PPG Indus., 128 F.3d at 107; see also Leadertex, 67 F.3d at 26 ("[P]retrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice sufficient to support a finding of waiver.").

In any event, Wi-LAN's litigation efforts were not inconsistent with arbitration. Wi-LAN has consistently asserted that its patent-infringement claims relate only to products that are not covered by the PLA, and that those claims, standing alone, are thus nonarbitrable.[4] (Defs.' Mem. of Law 17; No. 12 Civ. 23611, Dkt. 38 at 6-7 (S.D.Fl.).) According to Wi-LAN, when LG filed its motion for summary judgment on January 25, 2013 arguing, to the contrary, that the products at issue *are* covered by the PLA, an arbitrable dispute arose for the first time as to some of Wi-LAN's claims. (Defs.' Mem. of Law 17-18 & n.7; Reply 4.) Two weeks later, on February 8, 2013, Wi-LAN submitted an arbitration demand to JAMS, and, on February 11, 2013, Wi-LAN filed a motion to compel arbitration. (Harris Decl. Ex. 3; No. 12 Civ. 23611, Dkt. 37 (S.D.Fl.).)

Given Wi-LAN's consistently held position that none of the televisions are covered by the PLA, nothing about Wi-LAN's previous conduct is inconsistent with its desire to arbitrate the dispute over the interpretation of the PLA. See, e.g., Rush, 779 F.2d at 888-89 (no waiver where defendants had "reasonably perceived" some of the claims to be nonarbitrable); Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 463 (2d Cir. 1985) ("[p]lainly, the portions of the motion addressed to nonarbitrable claims do not constitute a waiver").

For the foregoing reasons, the Court concludes that Wi-LAN has not waived its right to arbitrate.

## III.    Applicability of the Arbitration Clause

LG next argues that the Arbitration Clause does not apply because Wi-LAN chose to invoke the "injunctive/equitable relief in a judicial forum provision of the [PLA] by filing the Florida litigation." (Pls.' Opp'n 21.) Wi-LAN responds that it is the arbitrator that must decide that issue, which is, in any event, without merit. (Defs.' Reply 6-9.) The Court agrees that

---

[4] The Court expresses no opinion as to whether Wi-LAN's position is correct.

pursuant to the Arbitration Clause, this issue must be decided by the arbitrator.  Whether LG's

argument is viewed as raising an issue of contract interpretation or one of arbitrability, the

parties' agreement dictates that the arbitrator decide it.[5]

Under federal law, "certain presumptions inform the analysis" regarding "[w]hether

parties have obligated themselves to arbitrate" a particular issue.  Shaw Grp. Inc. v. Triplefine

Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (citations omitted).  Where, as here, the Arbitration

Clause is a broad one, there is a presumption that the arbitrator should decide any dispute that

"implicates issues of contract construction."  Louis Dreyfus Negoce S.A. v. Blystad Shipping &

Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001) (quoting Collins & Aikman Prods. Co. v. Bldg.

Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)); In re Arbitration Between Ayco Co., L.P., 770

N.Y.S.2d 453, 456 (App. Div. 2004) (citing Louis Dreyfus, 252 F.3d at 224).  By contrast, issues

of arbitrability shall only be referred to the arbitrator if there is clear and unmistakable evidence

in the agreement that the parties so intended.  Shaw, 322 F.3d at 120-21.

The parties' agreement contains clear and unmistakable evidence that they intended the

arbitrator to resolve both issues of contract interpretation and issues of arbitrability.   The

Arbitration Clause in the PLA directs that "arbitration shall be administered by JAMS pursuant

to its Comprehensive Arbitration Rules and Procedures."   (Dallow Decl. Ex. A ¶ 8.3.)   The

JAMS rules, in turn, provide that:

> Jurisdictional and *arbitrability issues*, including disputes over the
> formation, existence, validity, *interpretation or scope of the
> agreement* under which Arbitration is sought, and who are proper
> parties to Arbitration, shall be submitted to and ruled on by the
> Arbitrator.   The Arbitrator has the authority to determine
> jurisdiction and *arbitrability issues* as a preliminary matter.

---

[5]  Because the parties' agreement clearly and unmistakably provides that issues of contract interpretation and
arbitrability shall be decided by the arbitrator for the reasons below, the Court need not decide whether LG's
argument raises an issue of contract interpretation or one of arbitrability.

(Dallow Decl. Ex. B, Rule 11(c) (emphasis added).)

The JAMS rules, which are incorporated into the Arbitration Clause, dictate that the arbitrator, not the Court, must address LG's argument that the Arbitration Clause does not apply because Wi-LAN "chose" litigation. (Pl.'s Opp'n 20-21.) "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 & n.1 (2d Cir. 2005). In Emilio v. Sprint Spectrum L.P., 508 F. App'x 3, 5 (2d Cir. 2013), for example, the Second Circuit concluded that a nearly identical JAMS Rule provided evidence that "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator." See also Shaw, 322 F.3d at 125 (holding, based on rules incorporated by arbitration agreement, that "the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability"). By consenting to be governed by the JAMS rules, the parties thus clearly and unmistakably consented to arbitrate any preliminary "arbitrability issues" as well as the "interpretation . . . of the agreement." (Dallow Decl. Ex. B, Rule 11(c).)

LG asserts that its argument raises an issue of arbitrability—not an issue of contract interpretation—and relies on United Parcel Serv. v. Lexington Ins. Grp., which held that, although the parties' agreement incorporated the AAA rules, those rules did not determine whether the court or the arbitrator should decide arbitrability issues. No. 12 Civ. 7961 (SAS), 2013 WL 1897777, at *1-2 (S.D.N.Y. May 7, 2013). In Lexington, however, the parties' agreement specified that the AAA rules would govern only the procedural aspects of arbitration, and the court held that questions of arbitrability are substantive. Id. By contrast, the PLA here clearly provides that "arbitration shall be administered by JAMS pursuant to its Comprehensive

12

Arbitration Rules and Procedures," (Dallow Decl. Ex. A, at ¶ 8.3), which in turn state that "[j]urisdictional and arbitrability disputes, including disputes over the . . . interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator," (Dallow Decl. Ex. B, Rule 11(c)). The Arbitration Clause here is thus more similar to the arbitration clauses at issue in Contec, 398 F.3d at 208, Emilio, 508 F. App'x at 6, and Shaw, 322 F.3d at 122, in all of which issues of arbitrability were delegated to the arbitrator. The arbitrator, accordingly, and not this Court, shall address LG's argument that the Arbitration Clause is inapplicable because Wi-LAN "chose" litigation.

## IV. The Claim-Splitting Doctrine

Lastly, LG asserts that the claim-splitting doctrine prevents this Court from enforcing the arbitration provision and requires the Court to enjoin Wi-LAN from proceeding with arbitration. (Pls.' Opp'n 23-24.) The claim-splitting doctrine does not apply in this setting.

The Second Circuit has described claim splitting as a doctrine that allows district courts to "manage their docket and dispense with duplicative litigation" by dismissing the later of two actions "when [a] plaintiff had previously filed related claims that were pending in the same federal court against the same defendants." Kanciper v. Suffolk Cnty. Soc. for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 92 (2d Cir. 2013) (quoting Katz v. Gerardi, 655 F.3d 1212, 1218-19 (10th Cir. 2011)). It also stated that "plaintiffs 'generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" Id. (quoting Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007)).

The claim-splitting doctrine, as described in Kanciper, is inapplicable here. The only "previously filed related claims" in this matter are those stayed in the District of New Jersey.

13

Following this Order, those claims will be submitted to the arbitrator, who will determine which are arbitrable and which are nonarbitrable. LG's contention that the claim-splitting doctrine requires all of the parties' claims, even the arbitrable ones, to be adjudicated together by the district court in New Jersey is unpersuasive. The Supreme Court has explained that the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (quoting Moses H. Cone, 460 U.S. at 20); see also In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 142 (2d Cir. 2011) (holding that the district court had appropriately enjoined arbitration of nonarbitrable claims, but that it had erred by enjoining arbitration as to the related, arbitrable claims). If the JAMS arbitrator determines that the parties' dispute involves both arbitrable and nonarbitrable issues—with the former to be decided by the arbitrator and the latter by the district court in New Jersey—any resulting bifurcation of the proceedings would be the outcome required by the FAA. See Byrd, 470 U.S. at 220-21 (noting that Moses H. Cone "affirmed an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings"); Nilsen v. Prudential-Bache Sec., 761 F. Supp. 279, 288 (S.D.N.Y. 1991) ("Although this order will split plaintiff's claims between two forums, the possible inefficiency of resulting parallel proceedings is a consequence of the [FAA] itself.").

There is no basis to conclude that the claim-splitting doctrine bars arbitration of the present dispute. LG has not cited any case that applies the claim-splitting doctrine to deny a motion to compel arbitration under similar circumstances, and claim splitting has been rejected as a defense to arbitration in this circuit in the past. See Danny's Const. Co., Inc. v. Birdair, Inc., 136 F. Supp. 2d 134, 146 (W.D.N.Y. 2000) (rejecting claim-splitting argument and compelling arbitration, despite the fact that it would "likely result in [the plaintiff's] contesting related issues

of fact in two different forums"). LG, therefore, has not presented a valid reason why this Court should refrain from enforcing the parties' arbitration agreement.

## CONCLUSION

For the foregoing reasons, Wi-LAN's motion to compel arbitration is granted and LG's request for declaratory and injunctive relief is denied. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated:       July 21, 2014
             New York, New York

_____
Ronnie Abrams
United States District Judge