UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: July 29, 2015

LG ELECTRONICS, INC. and LG
ELECTRONICS U.S.A., INC.,

        Plaintiffs,

v.

WI-LAN USA, INC. and WI-LAN INC.,

        Defendants.

No. 13-CV-2237 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiffs LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG") seek a stay, pending appeal, of the execution of this Court's judgment compelling arbitration of LG's patent dispute with Defendants Wi-LAN USA, Inc. and Wi-LAN, Inc. (collectively, "Wi-LAN"). For the reasons that follow, LG's motion is denied.

    A full account of the underlying dispute and procedural history is detailed in the Court's Opinion and Order of July 21, 2014 ("Opinion"), Op. (Dkt. 50) at 1–4, and the Court assumes the parties' familiarity with the record.

## LEGAL STANDARD

    In determining whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation omitted). *See also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). "The party requesting a stay

bears the burden of showing that the circumstances justify an exercise of [this] discretion." *Nken*, 556 U.S. at 433–34.

"The first two factors of [this] standard are the most critical," *id.*, and bear an inversely proportional relationship to one another, *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). Where the likelihood of success on the merits is significant, less irreparable harm must be shown, and vice versa. *Id.* In no case, however, is it "enough that the chance of success be better than negligible," or that there be a mere "possibility of irreparable injury." *Nken*, 556 U.S. at 434. (quotations omitted). Indeed, at least one court has suggested that a motion for a stay pending appeal must raise "serious questions" where, as here, a district court is asked to review its own order. *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014).

## DISCUSSION

### I. Likelihood of Success on the Merits

LG raises two arguments in its motion for a stay pending appeal. First, it argues that the Court misapplied Second Circuit precedent, improperly considered cases in which defendants—not plaintiffs—sought arbitration after first pursuing litigation, and, as a result, erroneously concluded that Wi-LAN had not waived its right to arbitration under the parties' patent license agreement ("PLA"). Pls.' Mem. 4–6. Second, it argues that the Court erroneously found the so-called "claim splitting" doctrine inapplicable and impermissibly compelled arbitration even though purportedly identical claims are pending before the District of New Jersey (the "New Jersey Court"). *Id.* at 7–8. The Court is not persuaded by either argument.

## A.     Waiver

As discussed in the Opinion, courts in this Circuit look to a three-part test to determine whether a party has waived its right to arbitration. Op. 7. This test considers: "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). In its motion, LG principally argues that the Court improperly analyzed the first and third prongs of this test. Pls.' Mem. 4–6.

As to the first prong, "the time elapsed from the commencement of litigation to the request for arbitration," LG argues that the Court should have considered the four month period of time between the filing of Wi-LAN's complaint and its arbitration demand, and not the shorter, two-week period between LG's motion for summary judgment in the Southern District of Florida (the "Florida Court") and Wi-LAN's demand for arbitration in New York. Pls.' Mem. 4–5. But the Court did consider this four month period. It expressly held, relying on clear Second Circuit precedent, that a four month delay in seeking arbitration is, by itself, insufficient to establish waiver. *See* Op. 9 (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) and *PPG Indus.*, 128 F.3d at 108).

The two week period between LG's motion for summary judgment and Wi-LAN's arbitral demand is, moreover, relevant to the question of prejudice, the third prong of the Second Circuit's waiver test, which the Court addresses in more detail below. *See Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 340 (S.D.N.Y.) *aff'd*, 205 F.3d 1324 (2d Cir. 1999) ("Sufficient prejudice exists where a party against whom waiver is asserted . . . delays invoking arbitration rights while the adversary incurs unnecessary delay or expense."). In light of Wi-LAN's assumption that its patent infringement claims fell outside the scope of the PLA, *see*

Op. 10, the relevant delay for the purpose of assessing prejudice is the two-week period between LG's filing of its dispositive motions (which first placed the interpretation of the PLA in dispute) and Wi-LAN's invocation of its arbitral rights, not the four months that "elapsed from the commencement of litigation to the request for arbitration." *PPG Indus.*, 128 F.3d at 107. It was thus appropriate for the Court to consider this shorter period in its Opinion, and to conclude that this two-week delay did not prejudice LG. *See* Op. 10.

LG displays a fundamental misunderstanding of the Court's discussion of prejudice and waiver in its Opinion. There are two points worth bearing in this respect. First, although courts within this Circuit employ a three-part test to determine waiver, the most important part of this test is its third prong: prejudice. *See Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) ("The key to a waiver analysis is prejudice."). Second, this test is not an exercise in arid formalism. Instead, it is addressed to the broader question of whether a party has acted inconsistently with its contractual right to arbitrate. *See Satcom*, 49 F. Supp. 2d at 341 ("The touchstone of waiver is the taking of action inconsistent with the right to arbitrate."). These two questions—of prejudice and conduct inconsistent with arbitral rights—are those to which the Court's Opinion was principally addressed. *See* Op. 8–10.

As the Court found in its Opinion, LG suffered no prejudice from Wi-LAN's delayed invocation of its arbitral rights, and Wi-LAN did not act in a manner inconsistent with these rights. *Id.* at 10. None of LG's arguments, Pls.' Mem. 4–6, persuade the Court otherwise such that LG is likely to succeed on the merits of its appeal.

LG argues that the Court's Opinion will unfairly require defendants like LG to apprise plaintiffs like Wi-LAN of their arbitral rights. *Id.* at 4. If Wi-LAN's delayed invocation of its arbitral rights does not amount to waiver, LG contends, future plaintiffs may attempt to evade

4

arbitration by first filing in federal court. *Id.* Defendants, meanwhile, will be left with two equally unsatisfying options: litigate in federal court knowing that a plaintiff could, at any time, invoke its arbitral rights, or engage in costly motion practice to compel arbitration. *Id.*

This argument is belied by the facts of this case. At all relevant times, Wi-LAN has taken the position that the infringing products named in its complaint fall within the PLA. *See* Op. 10. That this was Wi-LAN's understanding is bolstered by the nature of its arbitral demand, namely, for an interpretation of the PLA and not for adjudication of the underlying infringement dispute. There was thus no reason for Wi-LAN to seek arbitration until LG's motion for summary judgment made it clear that coverage of the allegedly infringing products by the PLA was in dispute. *See Rush*, 779 F.2d at 888–89 (no waiver where defendants "reasonably perceived" some of the claims to be nonarbitrable). Accordingly, the Court's finding that Wi-LAN did not waive its arbitral rights in no way rewards forum shopping or incentivizes unscrupulous litigation strategy.

Nor did Wi-LAN otherwise engage in the sort of extensive litigation that might have prejudiced LG. *See S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) ("A party is deemed to have waived its right to arbitration if it engages in protracted litigation that results in prejudice to the opposing party.") (quotation omitted). It filed no dispositive motions, did not delay in seeking arbitration, and did not undertake any other prejudicial conduct. *C.f. La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160 (2d Cir. 2010) (finding waiver where plaintiff pursued litigation for more than a year before seeking arbitration, and where defendant had already won "several key procedural victories"); *Satcom*, 49 F. Supp. 2d at 340 (finding waiver where defendant "generally prevailed in [the] action to date and would be forced to start over in arbitration").

Indeed, the only action Wi-LAN took that was potentially prejudicial to LG was to seek discovery in the Florida Court—discovery not provided for, at least not explicitly, by the JAMS Comprehensive Arbitration Procedures and Rules. *See Satcom*, 49 F. Supp. 2d at 340 ("Sufficient prejudice exists where a party against whom waiver is asserted . . . engages in discovery procedures not available in arbitration."); *PPG Indus., Inc.*, 128 F.3d at 109. LG, however, never responded to these discovery requests, and was thus not prejudiced as a result.

Contrary to LG's urging, a different result is not compelled by the Second Circuit cases finding waiver where a plaintiff, and not a defendant, pursued litigation prior to seeking arbitration. *See* Pls.' Mem. 5. As an initial matter, the Second Circuit has explicitly noted that district courts must apply its three-part waiver test to the "specific context of each particular case," *La. Stadium*, 626 F.3d at 159, which the Court did here. Furthermore, the cases relied on by LG, such as *La. Stadium* or *Satcom*, are distinguishable from the case at hand.

Unlike in *La. Stadium*, for instance, where "[e]leven months elapsed between [plaintiff's] initial filings in state and federal court and its motion to compel arbitration," and in those eleven months, defendant won "several key procedural victories," 626 F.3d at 159–160, here only four months elapsed and the only procedural "victory" of LG's during this time was the transfer of the action to New Jersey—with Wi-LAN's consent. The plaintiff in *La. Stadium*, moreover, sought to compel arbitration on the merits and only after receiving a "detailed deficiency letter" from defendants that "plainly foreshadowed" a motion for judgment on the pleadings. *Id.* at 160. Here, Wi-LAN is not seeking arbitration on the merits—only on a narrow interpretive question. Its arbitral demand is thus not "a means of aborting a suit that did not proceed as planned in the District Court." *Id.* at 161. Only if Wi-LAN *loses* in arbitration—with a determination that the

6

PLA *does* cover the wireless televisions—would the case stay before JAMS and not return to federal court in New Jersey for adjudication on the merits.

*Satcom* is similarly distinguishable. The parties here have not taken "extensive discovery under the Federal Rules of Civil Procedure," LG has not "generally prevailed in this action to date" and thus would not be "forced to start over in arbitration," all substantive issues have not "already been litigated extensively," and Wi-LAN (the "party against whom waiver is urged") did not make "motions going to the merits" of LG's arguments. 49 F. Supp. 2d at 340–41. *See also Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993).

Accordingly, LG's arguments regarding waiver fall short of demonstrating a substantial likelihood of success on appeal. Indeed, *La. Stadium* itself recognized that "a plaintiff's initiation of a lawsuit does not, by itself, result in a waiver of arbitration." 626 F.3d at 160. In any event, "[a]ny doubt as to whether there has been waiver should be resolved in favor of arbitration," *Satcom*, 49 F. Supp. 2d at 339—precisely what the Court ordered in its Opinion.

### B.   Claim Splitting

LG is no more likely to prevail on its argument that Wi-LAN has impermissibly split its claims between federal court and arbitration. Pls.' Mem. 7–8.

As an initial matter, LG has not identified a single case suggesting that the claim splitting doctrine applies where a party splits its theories of recovery between federal court and arbitration. Indeed, this argument runs afoul of the Federal Arbitration Act's ("FAA") strong preference for arbitration, even where this preference might result in the piecemeal resolution of an action. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (explaining that the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in

original). The argument also runs contrary to existing Second Circuit case law. *See* Op. 14–15. *C.f. Kanciper v. Suffolk Cnty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92 (2d Cir. 2013) (finding that the claim splitting doctrine applies "where [a] plaintiff had previously filed related claims that were pending in the *same federal court* against the same defendants") (quotation omitted) (emphasis added).

Even if the claim splitting doctrine were to apply as between federal court and arbitration, it would still fail to preclude arbitration here. Wi-LAN is not presenting multiple theories of recovery—or even the same theory—across multiple forums. *C.f. Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) ("[A] plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories."); *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002). Wi-LAN brought two patent infringement claims as part of a single action in federal court and then—in response to LG's motion for summary judgment, and as required by the PLA—sought for an arbitrator to determine whether or not its claims fall within the PLA's scope.

LG argues that this amounts to impermissible splitting, because Wi-LAN is seeking adjudication of one element of its patent infringement claims before JAMS, while pursuing the remaining merits of its claims in federal court in New Jersey. *See* Pls.' Mem. 7 ("Wi-LAN, the original **plaintiff**, is attempting to resolve a portion of ***its own affirmative patent infringement claim*** through arbitration.") (emphasis in original). But such conduct is not barred by the claim splitting doctrine, because it does not trigger the *res judicata* concerns that motivate this doctrine. *See Curtis w. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2002) ("The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata*."); 18 Charles Alan Wright et al., Fed. Prac. & Proc. § 4406 (2d ed. 2002) ("[C]ourts at times express

principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment."). The outcome of the JAMS arbitration will not preclude the New Jersey action, because Wi-LAN is not seeking adjudication of the merits of its claims, only of a narrow interpretive question.

If anything, it is in Wi-LAN's interest for the JAMS arbitrator to conclude that its claims are not covered by the PLA such that the merits must be litigated before the Federal court in New Jersey and not arbitrated. If, however, Wi-LAN were to lose in arbitration, with a decision that some or all of its claims were arbitrable, then any such claims would be adjudicated by JAMS or withdrawn by Wi-LAN. That Wi-LAN would, potentially, still have claims pending in federal court regarding purportedly infringing non-wireless products does not alter this conclusion, and would be perfectly consistent with the piecemeal approach to claim adjudication endorsed by Congress in the FAA. *See Dean Witter Reynolds*, 470 U.S. at 221.

Thus, even if the claim splitting doctrine did apply as between federal court and arbitration, the doctrine would only preclude arbitration if Wi-LAN were to somehow press on in New Jersey with the merits of any arbitrable claims at the same time it was adjudicating the merits of these same claims in arbitration. This is not yet the case, nor is it likely to be. Any claim splitting concerns are thus premature at best.

## II. Irreparable Harm

In any event, LG has not shown irreparable harm, and surely not that any such harm outweighs the chance it has of succeeding on the merits of its appeal. LG has pointed to only one case, *Woodlawn Cemetery v. Local 365, Cemetery Workers & Greens Attendants Union*, 930 F.2d 154 (2d Cir. 1991), suggesting that the harm it faces absent a stay—the need to relitigate issues already raised in LG's dispositive motions before the Florida Court—is irreparable. *See* Pls.' Mem.

8. But here, unlike in *Woodlawn Cemetery*, the parties have not fully litigated the issue that will be sent to arbitration.

Although LG argued in its motion for summary judgment that its use of Wi-LAN's patents-in-suit was authorized under the PLA, Wi-LAN had not yet briefed or otherwise responded to the merits of this claim prior to this Court compelling arbitration. At best, LG faces the sort of circumstances the *Woodlawn Cemetery* court found do not amount to irreparable harm: the mere "spectre and cost of arbitration and the pendency of identical issues before" the New Jersey Court. *Woodlawn Cemetery*, 930 F.2d at 157.

Otherwise, LG merely argues that it suffers irreparable harm as a consequence of the time and money it invested in litigating this action. Pls.' Mem. 8–9. Expense alone, however, does not amount to irreparable harm. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

### III.    The Remaining *Nken* Factors

Lastly, the remaining two *Nken* factors also weigh against a stay.

LG has failed to demonstrate that a stay pending the outcome of its appeal would not prejudice Wi-LAN. Because LG bears the burden of showing that a stay is merited, *Nken*, 556 U.S. at 433–34, its argument that Wi-LAN has not identified the prejudice it would face were the Court to issue a stay, *see* Pls.' Mem. 9, is unpersuasive. LG's argument that any prejudice faced by Wi-LAN would be mitigated by LG's continued royalty payments during the pendency of its appeal, *id.*, is also of little merit. Wi-LAN's suit goes to whether the televisions in question are even covered by the PLA, pursuant to which these payments are made. If the televisions are indeed infringing products, they are not encompassed by the PLA, and any injury to Wi-LAN would not be mitigated by LG's royalty payments. Finally, LG's suggestion that a stay would preserve the

status quo, *id.* at 10, is flatly wrong: the status quo is this Court's considered judgment compelling arbitration, not the circumstances as they existed previously.

As to where the public interest lies, Wi-LAN is correct in noting that there is a strong public interest in favor of arbitration. *See* Defs.' Opp. 15 (quoting *Lefkowitz v. Reissman*, No. 12 Civ. 8703 (RA), 2014 WL 925410 at *8 (S.D.N.Y. Mar. 7, 2014)). LG has not identified any considerations to the contrary, noting only an interest in "preventing duplicative proceedings." Pls.' Mem. 9–10. As noted, however, the proceedings in this action are not duplicative. The remaining *Nken* factors thus militate against a stay.

## CONCLUSION

LG has not shown a strong likelihood of success on the merits of its appeal, nor any irreparable harm absent a stay. LG has also not shown that a stay would be sufficiently protective of Wi-LAN's interests or those of the public. For these reasons, LG's motion for a stay of this Court's judgment pending appeal is denied.

The Clerk of this Court is respectfully requested to close the motion pending at docket entry 52.

SO ORDERED.

Dated:   July 29, 2015
         New York, New York

Ronnie Abrams
United States District Judge